Manuel SANCHEZ, Appellant,

v.

UNITED STATES of America, Appellee.

No. 17726.

United States Court of Appeals
Ninth Circuit.

Dec. 26, 1962.

Rehearing Denied Feb. 13, 1963.

John J. Fahey and Edward L. Cragen, San Francisco, Cal., for appellant.

Cecil F. Poole, U. S. Atty., Jerrold Ladar and David R. Urdan, Asst. U. S. Attys., San Francisco, Cal., for appellee.

Before HAMLIN, MAGRUDER and DUNIWAY, Circuit Judges.

HAMLIN, Circuit Judge.

Appellant was convicted on two counts [1] of an indictment charging violations of 21 U.S.C. § 176a.[2] On appeal he alleges error in that: (1) there was no probable cause for his arrest and consequently the evidence obtained in the search incident thereto was inadmissible; (2) the trial court abused its discretion in not granting his motion for a continuance; (3) the court committed prejudicial error in not granting his motion to discharge counsel; and (4) the evidence was insufficient to support his conviction.

The evidence, viewed—as it must be [3]—in the light most favorable to the government, is set forth in the following paragraphs.

The United States Customs Service informed the Federal Narcotics Bureau that large amounts of marihuana were being smuggled into San Francisco and that it was believed that some of the marihuana would be used and concealed at 383A South Van Ness Avenue in San Francisco. Arrangements were made for a special employee of the Customs Service, Raoul Miller, to make a purchase of marihuana from one Elroy Jones (known to be a defendant in another narcotics

---

1. In Count One Sanchez was charged jointly with one John Henry Martinez with having sold and facilitated the sale of one pound of marihuana; and in Count Two Sanchez was charged jointly with Martinez with having concealed and facilitated the concealment of five pounds of marihuana. Sanchez was sentenced to five years on each count, the sentences to run concurrently.

2. "Notwithstanding any other provision of law, whoever, knowingly, with intent to defraud the United States, imports or brings into the United States marihuana contrary to law, * * * or receives, conceals, buys, sells, or in any manner fa-

cilitates the transportation, concealment, or sale of such marihuana after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law, * * * shall be imprisoned * * *.

"Whenever on trial for a violation of this subsection, the defendant is shown to have or to have had the marihuana in his possession such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains his possession to the satisfaction of the jury."

3. Teasley v. United States, 292 F.2d 460, 462 (9th Cir., 1961).

case) at or near these premises on April 25, 1960. Federal narcotics agents, customs agents and officers of the San Francisco police department staked out the premises on this date.

At or about 7:20 p. m. appellant drove up in front of the premises and parked his car. Another car operated by one John Martinez arrived at the same time and was parked directly in front of appellant's car. Martinez and appellant got out of their cars, conferred briefly, and entered 383 South Van Ness; Martinez was carrying a large paper sack. Elroy Jones arrived at about 8:00 p. m. and also entered 383A. A few minutes later Jones came out of the premises and walked across the street to the corner of 15th and South Van Ness where he was joined by the special employee, Raoul Miller. They had a conversation lasting approximately one to one-and-a-half minutes. Jones then re-entered 383A and Miller walked slowly down South Van Ness Avenue to his car. At about 8:10 p. m. Jones came out of 383A carrying a package. He crossed the street, joined Miller and the two walked to Miller's car and entered it. Jones got out of the car after a very short time, Miller drove away, and Jones walked toward the corner of 14th and South Van Ness. Appellant came out of 383A with two small children and also proceeded toward the corner of 14th and South Van Ness where he was joined by Jones. They conversed and then walked back toward 383A. Appellant and the two children entered 383A and Jones continued on to his car and drove away.

After Miller had driven away following his meeting with Jones, he met a federal narcotics agent at the corner of Market and Van Ness and handed the agent a package of marihuana. The agent searched him and found that he did not have the $80 in marked money that had been given to him for the purpose of making the purchase. This information

was radioed to the agents who were watching the premises at 383A South Van Ness. These agents then proceeded to the premises. An agent knocked on the door and announced in a loud voice: "Federal narcotics agents. Open the door, I want to talk to you." Upon receiving no response, the agent turned the doorknob and the door, which was unlocked, opened. The agents entered and placed appellant under arrest. Appellant was searched and the marked money was found on his person. One agent testified that appellant stated that he lived at the premises. The premises were searched and a quantity of marihuana was found in the bedroom. When asked where he got the marked money and the marihuana, appellant stated that he was holding the money and marihuana for a friend. An agent testified that later, at the office of the Bureau of Narcotics, appellant told him that the marihuana belonged to Martinez [4] and had been left at his house to sell.

The marihuana which was the subject of the sale and the marihuana found at 383A South Van Ness, together with the four marked $20 bills found on appellant's person, were introduced into evidence at the trial. Although appellant now contends that his arrest was unlawful and that therefore the evidence obtained incident thereto was inadmissible, no motion to suppress the allegedly illegally obtained evidence, as required by Rule 41(e), Federal Rules of Criminal Procedure, was made before or during trial; nor was any objection raised by appellant when the evidence was admitted. Appellant, however, requests this court to consider his contentions under Rule 52(b).

Under Rule 52(b) we may in the exercise of our discretion notice plain errors affecting the substantial rights of a party though they were not brought to

4. Martinez and Jones entered pleas of guilty, Jones receiving probation and Martinez being sentenced to a term of five years. Appellant also entered a plea of guilty, but later with the permission of the court withdrew the plea and proceeded to trial by jury.

the attention of the trial court.[5] We hold in the instant case that there was no error, let alone one affecting the substantial rights of appellant, in admitting the marihuana and marked money into evidence. The quantum or quality of evidence needed to show probable cause for an arrest is different from that required to sustain a conviction of a violation of the substantive offense.[6] A federal narcotics agent may under 26 U.S.C. § 7607 make an arrest without a warrant if he has "reasonable grounds to believe that the person to be arrested has committed or is committing" a violation of a law of the United States relating to marihuana. Stated another way, it need only be shown in a particular case that the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are "sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed.[7] We have examined the evidence in this case, portions of which are summarized above, and believe that under the facts and circumstances of this case there was probable cause for appellant's arrest.

We shall next consider appellant's contentions that the trial court abused its discretion in not granting appellant's motion for a continuance and prejudicially erred in not granting his motion to discharge counsel.

At the conclusion of the government's case the court adjourned until the next day. On the next day, out of the presence of the jury, counsel for appellant moved for a continuance, stating that the government had failed to call Martinez and Jones as witnesses and that counsel would like to bring Martinez (who was in San Quentin) and Jones (whose whereabouts was unknown) into court to testify. The proceedings before the court, in the jury's absence, which followed are set forth in the margin.[8]

---

5. See Billeci v. United States, 290 F.2d 628 (9th Cir., 1961), in which this court refused to consider claims similar to those now advanced by appellant where no motion to suppress evidence had been made under Rule 41(e).

6. Brinegar v. United States, 338 U.S. 160, 174–175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); Draper v. United States, 358 U.S. 307, 311–313, 79 S.Ct. 329, 3 L. Ed.2d 327 (1959).

7. Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

8. "MR. CLANCEY: The Government opposes the motion, Your Honor, on the grounds this case has been pending since May or early June. There have been numerous continuances. This matter of which Mrs. Minudri speaks is obviously not a trial preparation as until this time there has been no request of the Government to assist her in any manner. The Government is not required to produce every witness the defense thinks should be before the Court in the case and it is now brought up in the middle of a trial after they have seen the Government's case. We think it is untimely, unreasonable and therefore should be denied.

     *      *      *      *      *

"THE COURT: Well, there is nothing, in my opinion, that warrants granting any continuance in this case. It is indefinite in every respect. I will deny the motion for a continuance. You can bring in the jury.

"THE DEFENDANT: Your Honor, may I speak?

"THE COURT: Not unless—

"THE DEFENDANT: I wish to discharge my attorney.

"THE COURT: Right in the middle of the case?

"THE DEFENDANT: She won't cooperate with me, Your Honor.

"THE COURT: Come up and make a statement.

"THE DEFENDANT: Your Honor, I only have one way to defend myself and that is with these witnesses, the persons John Martinez that had this marihuana and Mr. Elroy Jones who gave me the money. They are both vital to my defense. My attorney has not brang (sic) them in.

"THE COURT: Has not what?

"THE DEFENDANT: Hasn't been able to locate them and we can't seem to agree. I wish to have these witnesses brang (sic) in for my defense. They (sic) have been perjured statements by federal agents and these witnesses are vital to my defense.

■ We hold that the district court did not abuse its discretion in denying appellant's motion for a continuance for the purpose of producing Martinez and Jones at the trial. Neither Martinez nor Jones was required by the government

"THE COURT: What has that got to do with what you just said, with discharging your attorney? What are you going to accomplish by that?

"THE DEFENDANT: I will hire another attorney.

"THE COURT: Not in the middle of the case.

"THE DEFENDANT: I don't like the way she has been handling it. She hasn't been able to bring up these witnesses. She says she has, but she hasn't, and the prosecution doesn't want to bring any witnesses in. It's all hearsay.

"THE COURT: The case, the Government's case is in and you are dissatisfied with your attorney?

"THE DEFENDANT: It's not that.

"THE COURT: That's the oldest game in the book with respect to delaying cases.

"THE DEFENDANT: It's no game to me, Your Honor.

"THE COURT: I won't allow the attorney to withdraw in the middle of this case.

"THE DEFENDANT: Well, I discharge her.

"THE COURT: How are you going to conduct your case?

"THE DEFENDANT: I will conduct it myself.

"THE COURT: What is it you are going to do? What are you going to do now if you handle it?

"THE DEFENDANT: I will make the attempt to bring these witnesses in.

"THE COURT: We are going on with the trial of the case this afternoon. This is the time set for the trial of the case.

"THE DEFENDANT: I will start phoning, making phone calls.

"THE COURT: You are in court now, my friend. You are here on bail in the United States District Court, charged with a serious offense. Your trial has proceeded, the Government has concluded its case. You don't like the looks of the case apparently now, you don't like the way your attorney has handled the case and you want to discharge her. Well, if you do, you will have to proceed yourself. Are you going to take the witness stand yourself? Are you going to put some witnesses on the stand? How are you going to conduct your defense this afternoon?

"THE DEFENDANT: I will conduct it the best I can. Basically I want these

witnesses. You don't seem to understand. I am not trying to pull any tricks.

"THE COURT: I am not talking about the witnesses. I have denied the motion for a continuance. The case is going ahead this afternoon. Why do you want to conduct your own defense this afternoon in this case when you have got your attorney present? It isn't going to do you any good to do that.

"THE DEFENDANT: Well, Your Honor, who is going to bring these witnesses in?

"THE COURT: The motion for the continuance is denied. There isn't the slightest basis for asking for a continuance after the Government's case is concluded. No grounds have been stated, there is nothing to indicate what the witnesses will testify to, and there is no basis on which the Court can grant a continuance in the middle of the trial of of the case. You better stay with your attorney.

"THE DEFENDANT: I make a motion for a mis-trial.

"THE COURT: You are attempting to appear for yourself?

"THE DEFENDANT: Yes.

"THE COURT: I will deny your motion. I will deny your motion for mistrial.

"THE DEFENDANT: I want these witnesses to appear here. They are for my defense and vital to my defense. Nobody has brang (sic) them in.

"THE COURT: I will bring the jury in and we shall proceed with the trial of this case. If you have any further evidence to submit, you can submit it through your attorney or, if you want to—

"THE DEFENDANT: I discharge my attorney and call for a mis-trial.

"THE COURT: I have already ruled on that. Mr. Bailiff, bring in the jury please. I do not give permission for the counsel for the defense to withdraw. The Court considers it is still her duty to appear here. She is an officer of the Court and I will not allow a withdrawal in the middle of the case in the middle of the trial.

"MRS. MINUDRI: May the record show I have not asked for such permission?

"THE COURT: The record will show that you will continue to act for the Defendant in this case. I will say to you before the jury comes in, Mrs. Minudri, this is an old stunt, I have had it years

to prove its case and thus there was no reason for the government to call them as witnesses. Since there was no showing as to the nature and materiality of the expected testimony of Martinez and Jones, the district court's refusal to grant the continuance was in accordance with the provisions of Rule 13(b), Rules of Practice, United States District Court, Northern District of California.[9]

The question remains whether the district court committed prejudicial error in denying appellant's motion to dismiss his counsel. Under 28 U.S.C. § 1654, "parties may plead and conduct their own cases personally" in courts of the United States. It would seem clear under this provision that a party who intelligently and competently waives the right to counsel prior to the commencement of trial should be allowed to conduct his own defense and this court has so held.[10]

■ If the defendant requests to conduct his own defense after the trial has begun, the trial judge is faced with a more difficult situation. First of all, he must, as in any case, determine whether, based upon the facts and circumstances of the case, including the background, experience and conduct of the accused, the request was intelligently made.[11] We feel that based upon the facts and circumstances of this case the district court could reasonably conclude that appellant had not made an intelligent waiver of his right to counsel. The only reason given by appellant for his desire to discharge counsel was that he (appellant) wanted to bring Martinez and Jones into court to testify and yet the court had repeatedly told him that he could not have a continuance for that purpose. When asked how he would proceed, he could only say that he wanted these witnesses. We submit that under these circumstances had the district court discharged his counsel at that stage in the proceedings, appellant would be before this court today urging that he had not intelligently waived his right to counsel.

---

ago, to come in and ask to be relieved of a case.

"MRS. MINUDRI: I didn't ask for it.

"THE COURT: I didn't say you did, no.

\* \* \* \* \*

"THE COURT: Ladies and gentlemen of the jury, the Government's case is concluded, as you were informed at the end of the session, yesterday, and if the defense has any presentation of evidence, it will come forward at this time.

"MRS. MINUDRI: I would like to call Sylvia Fultz at this time. \* \* \*"

Sylvia Fultz, who lived at 383A South Van Ness, then testified concerning the events that occurred on the night in question and also as to her relationship with the accused. Appellant then took the stand and testified as to his version of the occurrences on that night. On cross-examination he admitted that he had previously been convicted of a felony.

9. Rule 13(b) provides in pertinent part: "A motion to postpone or continue a trial on the grounds of absence of a witness or evidence shall be made upon affidavit showing the nature and materiality of the expected testimony or evidence, and that diligent effort has been made to secure the witness or evidence."

10. In Reynolds v. United States, 267 F. 2d 235 (9th Cir., 1959), the defendant, a college professor, made a specific and unequivocal request of the district court three days in advance of trial that he be allowed to conduct his own defense. There was no indication that the request was for the purpose of securing a delay in the proceedings or to permit the use of obstructionist tactics at the trial. The district court denied his request. The defendant appealed and on appeal the government did not oppose his request for reversal on the ground that the trial court had erred in refusing to allow him to proceed *pro se.* We held that the district court erred under the circumstances in denying the request and reversed the conviction. Cf., United States v. Cantor, 217 F.2d 536, 538 (2nd Cir., 1954) and Brown v. United States, 105 U.S.App.D.C. 77, 264 F.2d 363, 366 (1959) (dictum) in which the Second Circuit and the District of Columbia Circuit indicate that if a district court does err in refusing to allow a defendant to proceed in propria persona, such an error will not warrant reversal of the conviction in the absence of a showing that the defendant was prejudiced thereby.

11. Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938.)

■■ Further, the orderly conduct of a jury trial is the responsibility of the trial judge.[12] It is clear, for example, that an accused does not have an absolute right to change attorneys during the course of a trial. In United States v. Mitchell, 137 F.2d 1006, 2 Cir.,[13] the Court of Appeals for the Second Circuit stated:

"The cases cited by defendant stress equally, as, indeed, they properly should, the right of an accused to act for himself and his right to have a lawyer assigned in his behalf. [Citations] Obviously, however, those rights cannot be both exercised at the same time. The cases are dealing with a choice to be made at the opening of the trial. It would be unfair to say no further choice is possible after the case is opened, but it would be just as unfair to say that when a defendant sees a strong case made against him he can immediately dismiss assigned counsel and then obtain a delay—and often a mistrial, at least in districts where calendars are crowded—through the device of having new counsel assigned to him."

If the defendant does not request a change of counsel, but rather requests to conduct his own defense, it would seem that the trial court should have discretion to refuse the request if made only after a strong case has been presented against the accused and if from the circumstances it appears to be motivated by a desire to disrupt the orderly conduct of the trial. Thus, in United States v. Foster, 9 F.R.D. 367 (S.D.N.Y.1949)[14] Judge Medina in refusing to allow a defendant to proceed in *pro se* stated:

"Thus, at the outset, it seems significant that neither the Constitution nor the applicable federal statute lend the slightest support to the claim that Mr. Davis may dismiss his counsel, and sum up in his own behalf, as matter of right. The clear purport of the language just quoted seems to the contrary. One of the fundamental rights of defendants in criminal cases is the right to counsel. But the alleged absolute right, irrespective of the attendant circumstances, to dismiss counsel and carry on *pro se* is a quite different proposition. If such were the law, there would be fertile field in which defendants in criminal cases could operate to frustrate justice and, under the aegis of an alleged constitutional or other right, resort to every bedevilment of the court and jury that the ingenuity of man could devise."

In the instant case appellant attempted to discharge his counsel after a strong case had been presented against him. There had been no indication prior to his request that he was in any way dissatisfied with the services of his counsel; nor was he able at the time of his request to give any convincing reason for his desire to discharge his counsel. Under the circumstances, it would be reasonable for the trial court to conclude that appellant's request was actuated by a desire to disrupt the orderly proceeding of the trial. After the refusal of his request, he took the witness stand and under the tutelage of his counsel presented his defense. At the conclusion of the case, his counsel presented an able argument in his behalf to the jury. We hold that under the circumstances of this case, the district court did not err in refusing to allow appellant to conduct his own defense.

■ It is clear that there was sufficient evidence to support appellant's conviction and therefore the judgment is affirmed.

12. See, e. g., Brasier v. Jeary, 256 F.2d 474, 478 (8 Cir., 1958).

13. 137 F.2d 1006, 1010–1011 (2nd Cir., 1943), adhered to on rehearing, 138 F. 2d 831 (2 Cir., 1943), cert. den. 321 U.S. 794, 64 S.Ct. 785, 88 L.Ed. 1083 (1944).

14. 9 F.R.D. 367, 372 (S.D.N.Y.1949).