John Lawrence **REDMON**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 19783.

United States Court of Appeals
Ninth Circuit.

Jan. 18, 1966.

---

David L. Ludvigson, San Francisco, Cal., for appellant.

Manuel L. Real, U. S. Atty., John K. Van de Kamp, Asst. U. S. Atty., Chief, Crim. Div., J. Brin Schulman, Asst. U.S. Atty., Asst. Chief, Crim. Div.; Robert J. Timlin, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before MADDEN, Judge of the United States Court of Claims, and JERTBERG and DUNIWAY, Circuit Judges.

JERTBERG, Circuit Judge:

Appellant was charged in a one count indictment of the offense of knowingly and unlawfully receiving, concealing, and facilitating the concealment and transportation of 6.05 grams of heroin knowing the same had previously been imported into the United States contrary to the provisions of 21 U.S.C. § 173. Following trial to the court, sitting without a jury, appellant was convicted of the offense charged and sentenced to the custody of the Attorney General for a term of five years—the sentence to run concurrently with the sentence appellant was serving, imposed by the Superior Court of the State of California, following conviction of a state narcotic offense.

The facts may be summarized as follows:

On June 15, 1964, in the late afternoon, while still daylight, three agents of the Federal Bureau of Narcotics, Kiere, Borquez and Celaya, travelling in two cars, Kiere and Borquez in the lead car and Celaya in the following car, travelling north on Downey Road, East Los Angeles, approaching the intersection of Downey Road and Telegraph Road, saw appellant standing on the southeast corner of the intersection conversing with a male person identified as De Leon. As appellant and his companion turned to walk east on Telegraph Road, Kiere observed appellant holding in his right hand what appeared to be a rubber contraceptive containing white powder. Kiere called Borquez' attention to the object by saying "He is holding", whereupon Borquez looked at appellant and saw him holding a "rubber which looked like it was full of powder." Whereupon Borquez said to Kiere, "Yeah, let's take him." Kiere then picked up the radio in his car and spoke to Celaya in the car behind, saying "Let's take him."

As Celaya approached the intersection he observed appellant who was talking to his companion and glancing around. As appellant and his companion turned and began to walk east on Telegraph Road, Celaya saw in appellant's right hand an off-white object. As Kiere drove his car parallel and slightly ahead of appellant to park at the curb, appellant threw the object which he held in his hand over a fence and started to run.

The officers emerged from the car and appellant was caught by Borquez as Borquez shouted "Don't move. Put your hands up." Celaya identified himself and stated they were police officers and to "freeze". Borquez placed appellant against a fence and told him he was arrested for violating the Federal Narcotics Laws. He searched the person of appellant for weapons and contraband and removed from his right front pocket a rubber contraceptive containing white powder. After the search Borquez went around the other side of the fence and found a rubber contraceptive with a white powdery content. Appellant was placed in the rear of Kiere's car. Kiere asked him how much he had thrown over the fence and appellant said it was the same size package that had been taken out of his pocket. In response to questions concerning his name and identity, appellant stated that the agents should get him out of the area because the guy from whom he bought the stuff lived nearby. At the time these statements

were made by appellant he had not been advised of his right to remain silent.

The narcotic agents were experienced in the enforcement of the narcotic laws, two having served as agents for more than three years; one having served as agent for more than six years. Two of them testified that they were "familiar with the area" where appellant was arrested, and such area was known to them to be a community frequented by narcotic peddlers and addicts.

Appellant was then driven in Kiere's car to the police station. During the trip there was no conversation between the agents and appellant except for an inquiry as to appellant's name and address.

At the police station appellant was interviewed by the three agents. Prior to such interview appellant was advised that he didn't have to say anything and was asked if he wanted a lawyer, or if he had one. Appellant responded that he didn't want a lawyer, he just wanted to see his wife. At no time did appellant request an attorney. Appellant was told that the agents wanted his cooperation and asked him to tell what happened and where he got the heroin. The appellant was further advised that anything he did to assist the Government would be brought to the attention of the United States Attorney's office for their consideration and that "it might be possible" for the United States Attorney to consider a "tax count". Appellant advised that he had purchased the heroin from "Eddie", three or four blocks from the place where he was arrested; that he could not that evening take the agents for another buy from Eddie because he had just bought a quarter of an ounce from him. He said that he might be able to develop a case later. Appellant also offered to assist the officers in developing further cases against other buyers in East Los Angeles and disclosed a number of persons from whom he had purchased heroin. After the interview on Sunday evening, appellant took the agents to various locations in East Los Angeles and pointed out the homes of various peddlers he knew.

At the outset of the trial appellant filed a written motion to suppress the object which was found by Agent Borquez outside the fence, and the object taken in a search of his person, and any statements or admissions made by appellant at the time he was taken into custody or subsequent to his arrest on the grounds of illegal arrest and search. During the trial appellant renewed his written motion to suppress and also orally objected to the admission into evidence of the two items above described, and any statements or admissions made by appellant on the ground that they were the fruits of an illegal arrest. Appellant also objected to the admission of any testimony concerning statements made by appellant based on the "doctrine of a recent case, Escobedo v. State of Illinois."

The district court denied appellant's motion to suppress and overruled appellant's objections.

The two items above mentioned were identified by a government chemist as being heroin and were received in evidence as Exhibits 1 and 2, as well as the testimony of the witnesses relating to all statements made by appellant to the agents.

As errors appellant specifies that the trial court erred:

1. In allowing the introduction of Exhibits 1 and 2 because they were obtained as the result of an illegal arrest and seizure;

2. In allowing the introduction of evidence of appellant's alleged admissions made at the time of arrest as the result of questioning by the arresting officers and at a time when appellant was not advised of his right to counsel or his right to remain silent;

3. In allowing the introduction in evidence of appellant's alleged admissions made at the police station.

Before considering appellant's specification of errors it should be noted that the district court was the trier of facts, the judge of the credibility of the witnesses, the one whose duty it was to re-

solve conflicts in the evidence, and to draw reasonable inferences therefrom.

■ Appellant characterizes as absurd and unbelievable the testimony of the agents as to the actions and conduct of the appellant prior to his arrest. As we have said the district court had the opportunity to observe the witnesses who testified before it, and to weigh and consider the probative value of their testimony. The court chose to believe their testimony. We are in no position to say that the district court erred in so doing. It should also be noted that it is our duty to view the testimony in the light most favorable to sustain the judgment.

Appellant's first contention is that the district court erred in admitting into evidence Exhibits 1 and 2. This error is based upon appellant's contention that appellant's arrest occurred before appellant threw over the fence the object which was later proved to contain heroin and that appellant's arrest and subsequent search were based only upon suspicion and were without probable cause to make the arrest. It is appellant's contention that he was arrested when Agent Celaya called to appellant stating "We are police officers, freeze."

■ Assuming, arguendo, that appellant's arrest occurred when Agent Celaya called to appellant to "freeze", we are satisfied that at that time, under the facts and circumstances as summarized above, the agents had probable cause to believe that appellant was committing a violation of the Federal Narcotics Laws. The call made to appellant by Agent Celaya was made after the agents saw appellant throw an object, which they had previously seen in appellant's right hand, over the fence and which they all identified as a white or tan object containing a powdery substance.

■ It is well-settled that agents of the Federal Bureau of Narcotics may arrest without a warrant if they have probable cause and reasonable grounds to believe that such person has committed, or is committing, a violation of the Federal Narcotics Law. 26 U.S.C. § 7607. Dra-

per v. United States, 358 U.S. 307, 310, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); Teasley v. United States, 292 F.2d 460 (9th Cir. 1961). .

■■ "Reasonable grounds" as used in § 7607(2) is substantially equivalent of the same meaning as "probable cause" as used in the Fourth Amendment to the United States Constitution. Draper v. United States, supra, 358 U.S. at 310, 79 S.Ct. at 331; Elkanich v. United States, 327 F.2d 417 (9th Cir. 1964), C.D. 377 U.S. 917, 84 S.Ct. 1182, 12 L.Ed.2d 186 (1964). To establish probable cause or reasonable grounds:

"[I]t need only be shown in a particular case that the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are 'sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." (Footnote omitted). Sanchez v. United States, 311 F.2d 327, 330 (9th Cir. 1962), C.D. 373 U.S. 949, 83 S.Ct. 1678, 10 L.Ed.2d 704.

■ Since the arrest of appellant was based upon probable cause, the search of the person of appellant was valid as incidental to a lawful arrest. Likewise the retrieval of the object thrown over the fence by appellant was also valid. Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964); Hollins v. United States, 338 F.2d 227 (9th Cir. 1960). The court did not err in refusing to suppress Exhibits 1 and 2.

Appellant contends the district court erred in the admission into evidence of statements made by appellant immediately after his arrest and before being taken to the police station. Appellant urges such statements should have been excluded on the ground such statements were the fruits of an illegal arrest, and on the further ground that at the time they were made, appellant was not advised by the agents of his right to counsel or his right to remain silent. Ad-

mittedly appellant had not been so advised.

■ Appellant's statements at that time were two in number. While being questioned after his arrest as to his name and identity, appellant asked the agents "to get him out of that area because the guy he bought the stuff from lived near there, * * *." It is apparent that such statement was unresponsive, spontaneous and voluntarily made by the appellant for his own reasons and was not elicited by the interrogation of the agents.

■ The other statement made by appellant was in response to a question by one of the agents asking how much heroin he had thrown over the fence, to which appellant responded: "The same amount which you found in my pocket." The question was innocuous since the object which had been thrown over the fence had been retrieved. Appellant's response added nothing to the knowledge of the agents since they had previously discovered the powdery substance in the search of appellant's pocket. At most the statement was merely cumulative and corroborative of independent evidence received from other witnesses. In our view the authorities relied upon by appellant, such as Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) are inapposite. Since we have already concluded that the arrest of appellant was legal and the search incident thereto was valid, it cannot be said that the statements were the fruits of an illegal arrest.

■ Appellant next contends that statements made by appellant at the police station should be excluded on the ground such statements were the fruits of an illegal arrest, and on the further ground that at the time they were made appellant was not advised by the agents of his right to counsel or his right to remain silent. The record discloses that prior to the questioning of appellant at the police station he was advised of his right to remain silent, and was asked if he wanted a lawyer or if he had one. Appellant responded that he didn't want a lawyer, he just wanted to see his wife. He did not request the services of an attorney.

In his briefs appellant does not appear to dispute that he was advised of his right to remain silent and concedes that "the transcript contains conflicting testimony as to whether appellant was advised of his right to counsel after he had been taken to the police station." From the rulings of the district court in denying appellant's motion to suppress and in over-ruling appellant's objections to the admission in evidence of such statements, it must be assumed that the trier of fact resolved the conflict contrary to appellant's contention. It should be noted that appellant was not a youthful person ignorant of, and inexperienced in, criminal proceedings. The record discloses that he had been convicted of the offense of burglary in 1957, of the offenses of forgery and possession of narcotics in 1960, and of the offense of armed robbery in 1964.

■ This is not a case in which it must be assumed that appellant waived his right to counsel because of his failure to request it. In this case appellant was asked if he wanted a lawyer, and stated that he did not want a lawyer. We find nothing in the record to show that appellant's choice was not knowingly and intelligently made. Again, it cannot be said that the statements made at the police station should be excluded as the fruits of an illegal arrest since we have already concluded that the arrest of appellant was legal.

■ Finally, appellant contends that the statements made by him at the police station should have been excluded because they were induced by promises made to him by the narcotic agents in the form of a promise of a lesser charge. The burden is upon appellant to show error. This he has failed to do. Appellant testified in his own behalf but offered not a scintilla of evidence that the statements made by him at the police station were involuntary, coerced, or induced in any manner. We find elsewhere

in the record nothing to substantiate appellant's contention unless we indulge in surmise, conjecture, and unwarranted assumptions. Appellant's reliance on Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964) is misplaced.

The judgment of conviction is affirmed.