[Crim. No. 7742. Second Dist., Div. One. Oct. 16, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES
FRANKLIN TABB, Defendant and Appellant.

James Franklin Tabb, in pro. per., for Defendant and
Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Peter Graber, Deputy Attorney General, for Plaintiff and Respondent.

WOOD, P. J.—Defendant was accused of unlawfully possessing heroin. He denied allegations of the information that he had been convicted twice previously of violating section 11500 of the Health and Safety Code. Trial by jury was waived. Upon stipulation, the case was submitted upon the transcript of the preliminary examination, with the right to present additional evidence. Defendant was adjudged guilty. The allegations as to prior convictions were found to be true. Defendant was sentenced to state prison, and it was ordered that the sentence run concurrently with the sentence in another case. Defendant filed a notice of appeal. It will be assumed that the appeal is from the judgment and the order denying the motion for a new trial.

Appellant contends that the heroin, received in evidence, was obtained by illegal search and seizure, and that the evidence was insufficient to support the judgment.

Prior to the arrest on the occasion involved herein, Officers Crowe and Hannon knew that the defendant was a user of narcotics—Officer Crowe had arrested him previously, and the defendant had told Officer Hannon that he was a user of heroin.

On December 10, 1960, about noon, while Police Officers Crowe and Hannon were in a "black and white" police car, travelling south on Compton Avenue, in Los Angeles, near 56th Street, they saw six or seven persons on the sidewalk at the southeast corner of the intersection of those streets. The officers knew that the intersection was frequented by narcotic addicts. Officer Crowe, who was driving the car, drove it diagonally across the intersection to the curb at the southeast corner of the intersection where the persons were standing.

Officer Hannon testified that he thought that, as a result of such driving, one of the "hypes" would run or give them (the officers) probable cause to get narcotics; that as the car approached the corner, he saw the defendant standing on the corner, with his back toward the car; that when the defendant turned around (facing the car) he was holding his hands in front of him, about waist high; defendant looked at the officers and then, with his right hand, put something into his mouth; then, with his left hand, the defendant threw a blue object over his head; the object landed on the sidewalk at a

place about 7 feet from defendant; when the object was thrown the officers were in the car which was about 12 feet from the defendant; Officer Hannon (witness) jumped out of the car, picked up the object and noticed that it was a balloon which was "knotted" near the end; through a hole in the balloon he saw a capsule therein with white powder in it; at that time he noticed that Officer Crowe was holding the defendant "by the arms or by the shoulder," and that the defendant was coughing; the defendant choked hard and spat an object onto the sidewalk; the object was a capsule containing white powder; he (witness) wrapped the balloon and the capsule in paper, and later delivered them to the property section of the police department; neither of the officers choked or attempted to choke the defendant; after defendant was arrested he said to the officers: "I know you have got me dead bang, but don't arrest me because you know I am on parole"; then the defendant said that the officers should have arrested the man in the black shirt who was the dealer from whom he had just purchased the two caps for $6.00.

Officer Crowe testified that he stopped the police car abruptly at the southeast corner of the intersection and at that time, when he was about 10 feet from the defendant, he saw the defendant turn around, look at the car, and then make a throwing motion with his left hand; he (witness) got out of the car and took the defendant into custody; while he was arresting and handcuffing the defendant, the defendant was gagging and a white capsule dropped from defendant's mouth; the defendant said that he had just purchased the two caps from a person who had just walked around the corner; he (officer) had observed that a person wearing a black shirt had walked fast while going away from the corner; defendant said that he could not have swallowed the capsule, because he needs water in order to swallow a pill.

Defendant testified that while he was going into a liquor store to get whiskey he saw he officers come across the street to the place where he was; the police car stopped, and Officer Crowe ran and grabbed him around the neck; then, when that officer started choking him, the other officer (Hannon) grabbed defendant's right arm and put it behind defendant's back; one of the officers hit defendant's stomach; while an officer was choking him, Officer Crowe said, "Don't swallow it"; after one of the officers had handcuffed him, the other officer went to the front of the liquor-store and came back

570

with a balloon; he (defendant) did not throw the balloon and he did not know what happened—that a guy (wearing a black shirt) ran around the corner; the officers found another capsule near defendant while they were choking him; that capsule did not come from his mouth, and he had not seen it before; he had not purchased any narcotics, and he was not trying to do so—he had been talking to the guy who ran away; he did not tell the officers that he had just purchased the balloon, nor tell them that the man who ran away was a dealer; he had been taking the naline test during a period of approximately two months preceding the arrest. Defendant testified further that he had been convicted twice of violating section 11500 of the Health and Safety Code.

In rebuttal, Officer Crowe testified that he did not place his hand around defendant's throat; and that neither of the officers hit defendant in the stomach.

The balloon and capsules were received in evidence. It was established that the capsules contained heroin. The officers did not have a warrant of arrest.

Appellant asserts that his arrest was illegal because the officers did not have a warrant of arrest or have probable cause to believe that he had committed a crime.

A peace officer may make an arrest without a warrant when he has reasonable cause to believe that the person to be arrested has committed a public offense in his presence. (Pen. Code, § 836, subd. 1.) "Probable cause for an arrest is shown if a man of ordinary caution or prudence would be led to believe and conscientiously entertain a strong suspicion of the guilt of the accused." (*People* v. *Fischer,* 49 Cal.2d 442, 446 [317 P.2d 967].)

The officers knew that said intersection was frequented by narcotic addicts. They had apprehended many such addicts at this corner. Knowledge by police officers that a location is a hangout for violators of narcotic laws may be considered in determining whether the officers had probable cause for making an arrest. (*People* v. *Taylor,* 174 Cal.App.2d 448, 451 [344 P.2d 837].) In the present case, the officers knew that defendant was a user of narcotics. As the car was approaching the corner, one of the officers saw defendant among those persons who were on the corner. The other officer recognized the defendant immediately after the car stopped. When defendant turned and looked toward the approaching police car, he put an object into his mouth and threw another object over his head. Conduct by a person indicating

an attempt to dispose of contraband by putting it into his mouth or throwing it away is a material factor in determining probable cause. (See *People* v. *Pendarvis,* 178 Cal.App.2d 239 [2 Cal.Rptr. 824].) The evidence was sufficient to support a finding of probable cause.

The balloon, containing heroin, was not obtained as a result of a search. Officer Hannon, after seeing the defendant throw the balloon, picked it up from the sidewalk. No search of the defendant, or of any person or place, was involved in the matter of obtaining that evidence.

Appellant asserts that the capsule, containing heroin, which came from his mouth was obtained illegally in that an officer choked him. The officers denied that they or either of them choked or hit the defendant. There was evidence that defendant put the capsule into his mouth, that he was coughing and gagging, and that he needed water in order to swallow a pill. The trial judge, while making statements just preceding the announcement of his decision, said that the defendant spat out the capsule. Such statement indicates that the judge found that an officer did not choke the defendant. This case is factually distinguishable, of course, from cases cited by defendant wherein it was found that the conduct of the officers in obtaining the evidence amounted to brutality and it shocked the conscience. The evidence herein was sufficient to support a finding that the heroin, which defendant had put into his mouth, was not obtained illegally by the officers.

Appellant also asserts that he spoke to his attorney (who represented him at the trial) regarding the matter of requiring the prosecution to show cause why defendant was arrested without a warrant. He asserts that he thought that his attorney was going to raise that issue. It seems that defendant is contending that he was not adequately represented by counsel at the trial. He did not advise the trial judge that he considered that he was not properly represented. The record shows that he was properly represented by counsel at the preliminary examination and at the trial.

The judgment and the order denying the motion for a new trial are affirmed.

Fourt, J., and Lillie, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 8, 1962.