277 So.2d 905

Max HINES

v.

STATE.

4 Div. 191.

Court of Criminal Appeals of Alabama.

March 13, 1973.

Rehearing Denied April 17, 1973.

Alice L. Anderson, Enterprise, for appellant.

William J. Baxley, Atty. Gen., and Don C. Dickert, Asst. Atty. Gen., for the State.

L. S. MOORE, Supernumerary Circuit Judge.

The appellant was indicted, tried and convicted in the Circuit Court of Pike County for the offense of murder in the second degree. His motion for a new trial was overruled by the trial court. Hence, this appeal.

The evidence on behalf of the State tends to show that Joseph Phillip Shultz, Jr., the victim of the alleged murder, and Ralph Paul Boehm and Ronald Dobson were in the military service and were stationed at Ft. Rucker; that on the night of February 12 or early morning of February 13, 1971, they proceeded in a car owned by and driven by Shultz to Bryant's Tavern located on Highway 231 in Pike County; that Shultz, the deceased, and Boehm got out of the car at the tavern and entered the tavern leaving Dobson asleep on the back seat of the car; that Boehm and Shultz drank some beer in the tavern and during the time they were in the tavern Shultz danced with a girl; that later Boehm missed Shultz and asked a group of

people if anybody had seen the young G.I. that he came in with; that the defendant pushed through the crowd and told Boehm that his friend was "outside cut up, or hurt, or something to that effect" and that if Boehm didn't "get the hell out of there" he would get the same thing; that Boehm told the appellant that he did not come there looking for trouble; that Boehm went outside and finally found Shultz lying on his back on the traffic island between the parking lot and the highway; that Shultz did not say anything and did not move and that Boehm bent over him and could not hear him breath; that others helped Boehm get Shultz into the front seat of the car; that Dobson was still in the car and that Boehm drove the car and took Shultz to the hospital at Ft. Rucker; that on the way to the hospital Boehm stopped at Chisolm's Truck Stop to get gas for the car; that someone at the truck stop asked Boehm if he wanted them to call the M. P.'s on the post and he said, "yes;" that the hospital people were at the door of the hospital when they arrived; that Boehm stopped the car at the hospital and they took Shultz out of the car; that Boehm never saw Shultz thereafter; and that Dobson was awake during the ride from Bryant's Tavern to the hospital.

Jowell Johnson, a witness for the State, testified in substance that he arrived at Bryant's Tavern about 10:30 on the night of February 12, 1971; that later the appellant and Billy Payne came into the tavern; that appellant danced with a girl named Sandy and was up at the bar talking to her when a soldier came up and asked her to dance with him; that she told him she did not want to dance and the soldier "called her a name" and the appellant told the soldier if he had anything to say to say it to him; that the soldier asked the appellant outside; that the appellant had a knife and got off the stool at the bar and put the knife in his front pocket and he and the soldier went outside; that four or five minutes later the appellant came back into the tavern and took hold of the window

shade and "did something with it," then put his hand in his pocket, came up to the bar and ordered a beer; that appellant told the other boy, "Your buddy is outside and he is messed up a little bit and you will have some of the same;" that the boy said, "No, No," and went outside and discovered the man by the side of his car; that he told the boy who was looking for him that he was over there; that the boy asked for help in getting the man in the car; that he and the appellant and Billy Payne put the man in the car; and that there was another man in the back seat of the car.

Georgia Howell testified in substance that she was a licensed practical nurse; that she was at the hospital when Shultz was brought in; that she saw him as they were getting him out of the car; that she saw and examined him in the emergency room; that the only thing she could find on the body was a small wound on the chest; and that there were no bruises. This witness was shown a picture and asked if she recognized the person in the picture; and she testified that she could not do so.

The witness Boehm was recalled and he identified the person in the picture as being Shultz, the deceased; and stated that Shultz's body was in the same condition when they arrived at the hospital as it was when he left Bryant's Tavern with it.

Georgia Howell was recalled and testified that the wound shown on the body in the picture fairly represented the wound that she observed on the body of the deceased. The picture was admitted into evidence over objection.

Leon Hood testified in substance that Boehm stopped at his place, Chisolm Truck Stop, and got gas on the night in question; that in the car he saw the man who was hurt; that he called the M. P.'s at Ft. Rucker; that Boehm left in the car and a few minutes later the appellant came to his place and wanted to get a tire; that while the appellant was there, he, Hood, had a call from Ft. Rucker; that after that call

he made the statement in the presence of the appellant and others in the truck stop that the man in the car must have been really stabbed; that the desk sergeant had just called him back and said that the man was very seriously injured or dead on arrival at the hospital and that the appellant said, "You damned right he was stabbed. I stabbed him;" and that appellant had a small pocket knife and he said, "This was the knife that stabbed him." The appellant's objection to the admission of those statements by the appellant was overruled by the trial court.

The death certificate issued for Joseph Phillip Shultz, Jr., and the stipulation of the parties both entered into evidence shows that he died as a result of a stab wound. His death occurred on February 13, 1971.

■ The evidence introduced by the appellant in his behalf consisted in an effort to show that he acted in self defense. This evidence did show that the appellant and the deceased did have a fight outside the front door of Bryant's Tavern on the occasion in question. All of the testimony, that for the State and that for the appellant, tended to show that upon the appellant's being invited by the deceased to go outside the deceased went out of the building and was followed by the appellant. The evidence in this case reveals a state of fact out of which every element of the doctrine of self defense became a jury question which was resolved by the jury against the appellant.

The cause of death of the deceased was shown by substantial and admissible evidence and the appellant's complaint in that respect is without merit.

There was substantial evidence of the guilt of the appellant. Therefore, the appellant's requested affirmative charge was correctly refused. The ground of the appellant's motion for a new trial relating to the sufficiency of the evidence was correctly ruled on by the trial court in denying and overruling his said motion.

In Bradford v. State, 35 Ala.App. 407, 47 So.2d 599, the Court said:

". . . [T]he principal point relied upon to effect a reversal of the judgment of conviction is the insufficiency of the evidence to support the verdict of the jury and to sustain the judgment of conviction.

. . . . . .

"As above stated the evidence in the case was for the jury to consider and determine, and to sustain the contention insisted upon by the defendant and put the court in error, would necessitate in effect substituting ourselves for the trial court and the jury, and this we are without authority to do. The trial court and the jury saw and heard the witnesses and were in every way better able to decide this controlling question than this court could possibly be."

In Blue v. State, 246 Ala. 73, 19 So.2d 11, the rule is stated in this manner:

"But it is equally true that where there is evidence of a substantial nature tending to establish the material issues of the case, then the affirmative charge should be refused . . ."

■ In the case at bar appellant complains that the witness, Hood, was permitted to testify to hearsay, over the objection of appellant, when he was allowed to state that at his place of business on the night in question he made the statement in the presence of the appellant that, "The desk sergeant had just called back and said that the man was very seriously injured or dead on arrival at the hospital." This brought on the appellant's statement in which he said, "You damned right he was stabbed. I stabbed him." The evidence complained of is not hearsay. Hood was merely relating to the appellant what someone else told him. It thus became a part of his conversation with the appellant. Manassa v. State, 47 Ala.App. 287, 253 So.2d 356.

Appellant complains that the trial court erred in admitting the testimony of the

witness Hood in stating the confession of the appellant, namely, "You damned right he was stabbed. I stabbed him." The appellant's objection to the admission of this evidence on the ground that no predicate had been laid was overruled by the trial court.

■ The evidence in this case clearly shows that at the time and place said statement was made by the appellant, he was with friends and acquaintances; that Hood operated the truck stop and was in the process at that time of doing a favor for appellant in connection with fixing a tire for him, which was not something he usually did for customers; that appellant had previously worked as an employee of Hood; that no officer was present; that appellant had not been questioned concerning the offense and had not been accused by anyone present of having committed it; that the entire conversation was related and there was a complete absence in it of any threats, coercive influence or anything which would produce fear or intimidation; and that no one present other than appellant and the person with him, his companion on that night, had any knowledge of how or by whom the deceased was injured. The evidence before the court at that time proved everything that a formal predicate could have shown.

In McAdory v. State, 62 Ala. 154, 161, the Court stated:

"Confessions of guilt can not be received as evidence, unless they appear to have been voluntary. Whether they are voluntary, is the duty of the court to determine, after a careful consideration of the age, situation and character of the accused, and the circumstances under which they are made. When all these are considered, if it satisfactorily appears that they spring from the volition of the accused, and there is an absence of evidence that any person had exerted an influence to induce them, it is not necessary, the witness proving them should be inquired of, whether he or any other person had told the prisoner it would be better for him to confess, or worse if he did not.—1 Green. Ev. § 219; Levison v. State, 54 Ala. 520. The confession of itself, taken in connection with the circumstances under which it was made, may bear the best evidence of its freedom from all improper appliances to the mind of the prisoner. . . . "

In Greer v. State, 36 Ala.App. 522, 60 So.2d 358, the authorities are collected and the Court stated:

"[1] A confession of incriminating assertion is presumed to be involuntary and inadmissible in evidence. The courts must not lose sight of the importance and purport of this truism.

"[2] There is a long line of authorities which hold that when the facts and circumstances attending the utterance of the confession clearly establish that it was made without fear or hope of reward the necessity of laying the formal predicate is obviated.

"[3] The duty rests on the trial judge to determine whether or not a confession was voluntarily made. His judgment or decision in this regard must be controlled by all the attendant circumstances.

"In the early case of Sullins v. State, 53 Ala. 474, our Supreme Court held:

" 'Before the confessions of the accused, or admissions made by him, can be received as evidence against him, it must appear to the court that they were voluntary, not constrained. Though made to the officer arresting him, or to the magistrate before whom he is carried for examination; or made in answer to inquiries propounded by either officer; and though neither has cautioned or warned him against confessing; if, on a consideration of all the circumstances surrounding him when made, they do not seem to have been influenced by the appli-

ances of hope or fear, from others, they are competent evidence.'

"This doctrine or rule has been consistently followed down through the long judicial history of our appellate courts. This is made sure by an examination of the following authorities: Love v. State, 124 Ala. 82, 27 So. 217; Christian v. State, 133 Ala. 109, 32 So. 64; Bush v. State, 136 Ala. 85, 33 So. 878; Morris v. State, 146 Ala. 66, 41 So. 274; Reedy v. State, 246 Ala. 363, 20 So.2d 528; Tillison v. State, 248 Ala. 199, 27 So.2d 43; Drake v. State, Ala.Sup., 57 So.2d 817; Davis v. State, 257 Ala. 447, 59 So.2d 592; Gardner v. State, 4 Ala.App. 131, 58 So. 1001; Henly v. State, 21 Ala.App. 259, 107 So. 801; Morris v. State, 25 Ala. App. 156, 142 So. 592; Cline v. State, 25 Ala.App. 433, 148 So. 172."

In the instant case the trial court did not err in admitting the confession. A review of the evidence leads us to the unquestioned conclusion that there is not the slightest reason for supposing that the declaration of the accused was induced or invited by the acts or coercion of anyone at the time and place in question.

The trial of this case began on November 29, 1971, and ended on November 30, 1971. When the case was called up for trial on November 29, 1971, the record shows that the parties announced ready for trial. This case had previously been set for trial on July 19, 1971, and on said date was continued due to the illness of counsel for appellant. It was again continued on September 14, 1971. When the case again came on for trial on November 29, 1971, the appellant did not move for a continuance due to an absent witness. The witness in question being one William J. Payne. During the trial the appellant offered a showing for the said Payne. The district attorney objected and said showing was not admitted in evidence but appears in the record as "Defendant's Exhibit No. 1." Said showing makes some statements as to why said witness was not present in court but no proof was offered in connection therewith.

On the hearing of the appellant's motion for new trial, William J. Payne appeared as a witness. He testified that he and appellant were together on the night in question when the deceased was injured; that he had known appellant for several years; that he helped put the deceased in the car at Bryant's Tavern; that he and appellant later went to the truck stop operated by the witness Hood; that he did not hear the conversation between Hood and appellant; that he was not with appellant all of the time at the truck stop; that he was rather drunk and the events of that night were vague to him; that after he and appellant left the truck stop they went to appellant's home and got appellant's wife and left for Winter Haven, Florida, and came back about one week later; and that he was living in Florida at the time of this trial. There is no fact or reason shown in his testimony why he could not be located by appellant and his counsel at the time of trial. After careful reading of this man's testimony on the hearing of the motion for new trial, we cannot see how it could have been helpful to appellant had he so testified at trial. It does not in fact contradict the testimony of the witness Hood. If the jury had heard it, the jury may well have believed appellant was guilty of flight.

Under the circumstances involved in this case, the district attorney's refusal to accept the showing for said witness, which amounts to an objection there, was correctly sustained by the trial court. By accepting a showing for an absent witness, the district attorney loses the benefit of cross-examination. The cross-examination of this witness on the motion for a new trial is an excellent example of the benefits thereof.

Furthermore, there was not a ground of a motion for new trial predicated upon newly discovered evidence. And

indeed there could not have been with reference to what this witness knew. It therefore, could not be used by the trial court to grant a new trial on the basis of newly discovered evidence.

Other witnesses wo lived in the county in which the case was tried testified on the hearing of the motion for new trial that they were present at Bryant's Tavern on the occasion when the deceased met his death. But no fact or reason is shown why they could not have been located and appeared as witnesses at the time of trial. Certainly this testimony cannot be considered newly discovered evidence since there were no grounds in said motion seeking a new trial on that basis.

The trial court correctly overruled appellant's motion for new trial.

The judgment of the trial court in this case after reciting the verdict of the jury proceeded with the following:

"Thereupon in open court on this day and the defendant being asked by the Court if he had anything to say why the judgment and the sentence of the law should not be passed upon him replied, 'I'm not guilty.' It is, therefore, considered, and adjudged by the Court that the defendant is guilty of the offense of Murder 2nd Degree as charged in the indictment,

"Thereupon in open court on this the 30th day of November, 1971, the defendant being formally adjudge [sic] guilty of Murder in the Second Degree, and his punishment having been fixed at 15 years imprisonment in the penitentiary by the jury of Pike County, Alabama, Defendant gives Notice of Appeal. Bond on Appeal is fixed at $15,000.00 dollars. Execution of sentence is suspended pending appeal."

In the formal judgment thus entered, the appellant was adjudged by the trial court to be guilty of murder in the second degree, but he was not sentenced in and by that judgment entry. However, the record on this appeal discloses that after the jury returned its verdict and was dismissed by the court, the following occurred:

"THE COURT: Mr. Hines you have heard the jury verdict. By their verdict, they find you guilty of the offense of murder in the second degree and fix your punishment at imprisonment in the penitentiary for fifteen years. Do you have anything to say why the sentence of the law should not be imposed upon you?

"THE DEFENDANT: I would like to appeal it.

"THE COURT: All right. On the jury verdict, the Court now formally sentences you to imprisonment in the penitentiary of Alabama for fifteen years. You say that you give notice of appeal. Notice of appeal will be entered. Bond on appeal is fixed at fifteen thousand dollars. The judgment will be suspended— the execution, that is, of this sentence, will be suspended pending the appeal. The Sheriff will take you in custody until an appeal bond has been approved. All right."

Since the record clearly discloses that the appellant was sentenced by the trial judge in open court, it would be an empty gesture to remand this cause for proper sentence. We have searched the record and find no error therein. However, since the formal judgment entry does not contain the sentence that the trial court did in fact impose upon the appellant as shown by the record, it is ordered and adjudged by this Court that this cause be affirmed but also remanded to the trial court with the directions, after notice to appellant or his counsel, to amend said judgment nunc pro tunc by placing therein the sentence imposed upon the appellant.

The foregoing opinion was prepared by the Honorable L. S. MOORE, Supenumerary Circuit Judge, serving as a Judge of

this Court under § 2 of Act No. 288, July 7, 1945, as amended; his opinion is hereby adopted as that of this Court.

Affirmed. Remanded with directions.

All the Judges concur.