577 P.2d 717

STATE of Arizona, Appellee,

v.

Wade Brian HUNT, Appellant.

No. 3881.

Supreme Court of Arizona,
In Banc.

April 7, 1978.

Bruce E. Babbitt, Former Atty. Gen., John A. LaSota, Jr., Acting Atty. Gen. by William J. Schafer, III and Galen H. Wilkes, Asst. Attys. Gen., Phoenix, for appellee.

George M. Rushforth, Kingman, for appellant.

HOLOHAN, Justice.

Appellant Wade Brian Hunt was charged with one count of burglary and two counts of furnishing drugs. Appellant's motion to sever the burglary count from the counts on furnishing drugs was granted. Appellant was then convicted of first-degree burglary, A.R.S. § 13–301, and in a later trial was also found guilty of two counts of furnishing narcotic drugs. A.R.S. § 36–1002.02. Based on the verdicts the trial court entered judgment and sentenced appellant to consecutive terms of imprisonment in the state prison. A timely appeal was filed. We took jurisdiction pursuant to 17A A.R.S. Sup.Ct.Rules, rule 47(e)(5).

Between 9:00 p. m. on January 30, 1976 and 7:00 a. m., January 31, 1976 numerous drugs were taken during a burglary of the Bullhead Pharmacy in Bullhead City, Arizona. Appellant became a suspect in the burglary after William McLean made statements to the police that connected the appellant to the burglary. Police questioned McLean after he and one Randy Jones had been arrested for possession of drugs which were found in appellant's automobile. In addition to making statements connecting appellant to the burglary, McLean also led police to some of the stolen drugs. Two other witnesses, David Mark Zyla and Thomas Weber testified that appellant boasted to them of committing the burglary. Appellant's conviction of furnishing drugs was based on Zyla's testimony that appellant had given him some of the drugs taken in the burglary.

Although appellant raises numerous issues on appeal, we shall discuss only those issues which merit consideration. The other issues raised, but not discussed, are so lacking in merit that they do not require discussion.

## DISCOVERY

Appellant contends that the trial court erred in not imposing sanctions for the failure of the state to comply with the provisions of the criminal rules applicable to discovery. Specifically, appellant sought to have the trial court preclude the state from calling as witnesses Jones and McLean. 17 A.R.S. Rules of Criminal Procedure, rule 15.7(a)(4).

The state had furnished several police reports to appellant. The names of witnesses appeared in the reports, but the state had not furnished any written or recorded statements by two witnesses—Jones and McLean. The trial court ordered the statements of Jones and McLean to be furnished by April 23, and if not furnished the state was to be precluded "from going into these issues at the trial."

The statements were not furnished by the date required, and it was not until the day of trial that a summary of the statements made by Jones and McLean was furnished to the appellant. The summary had been prepared by Officer Charles Street of the Mohave County Sheriff's Office based on his recollection of the interviews that he had had with the two witnesses. It was also disclosed for the first time that the tape of the interview had been destroyed.

The trial court, in response to the appellant's motion to impose sanctions, held a hearing to determine the proper course. The trial judge also ordered that the two witnesses be made available to the defense counsel for interview, and that the case be continued for one day.

At the hearing on the motion to impose sanctions, the evidence disclosed that Officer Charles Street of the Mohave County Sheriff's Office had interviewed the two witnesses and recorded the interviews. The officer had given the tape to the typist to transcribe and he then went on vacation, assuming that everything was in good order and that the usual procedures would be followed. Sometime shortly before the trial he found that the tape had been destroyed, so he wrote up a summary of his recollections of the statements given to him by Jones and McLean.

Officer Robert Melton of the Mohave County Sheriff's Office testified concerning the destruction of the tape:

"BY THE COURT:

"Q Officer Melton, I understand that you are personally aware of the tape recordings referred to taken by Officer Street of the witnesses Jones and McLean?

"A Yes, sir.

"Q Did you ever attempt to listen to those tapes?

"A Yes, sir, I did.

"Q What did you hear?

"A Our stenographer first called my attention to it when we tried to have them transcribed. There was just a wavering sound. You could discern that it was properly a voice but no words were discernible in it.

"Q Did you play the full extent of the tapes to pick up whether or not there was any part of it or did you just play the start of it?

"A No, sir, I played it a few seconds, just sporadically down the tape; then removed the tape, looked at the cartridge.

"I believe there is a small rubber buffer that goes under the cassette, and it was missing, and that's what caused the tape to go bad on both sides. I put the tape in the trash."

(Reporter's Transcript, Pages 151 and 152)

After the hearing the trial judge refused to preclude the state from calling the two witnesses, Jones and McLean, but he did offer to allow the defense counsel any additional time he might need for a continuance. The trial judge stated that he felt that there was no prejudice because the tape being useless could not have aided the defense. The trial court was convinced that there was no intentional destruction of material evidence nor tampering with the tape.

■■■ The sanctions imposed for violation of discovery rules are within the discretion of the trial court. Factors to be taken into account include: 1) reasons for nondisclosure; 2) the extent of prejudice, if any, to the opposing party; 3) the feasibility of rectifying that prejudice by continuance; and 4) any other relevant circumstances. *See State v. Clark*, 112 Ariz. 493, 543 P.2d 1122 (1975); *State v. Fenton*, 21 Ariz.App. 193, 517 P.2d 1086 (1974). In the case at issue the tape would not have aided the defense had it been preserved because it was unintelligible. The destruction of the tape occurred without any attempt to keep material evidence from the defense. The witnesses were made available to the defense for interview, and prior to the interview the defense was furnished with a summary of their statement made to the interviewing officer. The defense was offered an additional continuance if desired, but the offer was declined.

While the actions of the state and the investigating officers are subject to criticism, we agree with the trial court that the appellant was not prejudiced. The trial court did not abuse its discretion in allowing the witnesses to testify.

■■■ Appellant urges that the jury should have been made aware of the destruction of the tape. The appellant did not bring out any matter concerning the tape during the trial. The appellant can not very well complain of errors which are not raised at trial. *State v. Coward*, 108 Ariz. 270, 496 P.2d 131 (1972). Counsel for appellant suggests that he was precluded from going into this issue by the court's comment:

"[A]nd I further advise all parties in the room that until Jones and McLean have testified, this matter will not be discussed publicly in the presence of the jury or where a juror can over hear it." (Reporter's Transcript, Page 156)

Although the quoted statement is taken out of context it does not serve to support the position of appellant. It is clear that the trial court did not preclude raising the issue of the tape after the two witnesses had testified, so there was nothing to prevent counsel for appellant from offering evidence on the tape, if he wished, after the witnesses had testified. The two witnesses had nothing to do with the matter of the destruction of the tape. Counsel was well aware of the identity of the person who disposed of the tape. Nothing in the trial court's comment prevented inquiry into the issue after the two witnesses had testified.

■■ The appellant complains that he was not advised of the address changes for the witnesses Zyla, McLean and Jones. Since these witnesses were all provided for interview by the defense there was no prejudice shown.

■■ Appellant contends that the state failed to disclose the felony conviction of Zyla. There was no failure to disclose such information because there had not been a felony conviction of Zyla at the time of appellant's burglary trial; further appellant was allowed to question the witness

Zyla at the burglary trial concerning the pendency of criminal charges. It was not until after the burglary trial that Zyla was convicted of a felony, and appellant used that fact to impeach the witness Zyla when he testified in the second trial on the charge of furnishing narcotics. There was no violation of the discovery rules in the above instance.

## SEARCH AND SEIZURE

Appellant argues that the search and seizure of appellant's automobile [1] and the arrest of Jones and McLean were made without probable cause, and all evidence and information derived therefrom should be excluded under *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The facts concerning this issue are that on February 8, 1976 at 3:00 a. m. Officer Street observed an automobile in the middle of a dirt road near the Swim Beach area of Bullhead City. As Officer Street approached the vehicle he noticed that the occupants of the car who were seated in the front made gestures toward the floorboard. In addition, Officer Street noticed that one of the occupants threw two white pills out of the passenger window. Officer Street testified that the area in which the car was observed was often frequented by narcotics users. The occupants of the vehicle, Randy Jones and William McLean,[2] were arrested and gave information which led the police to David Mark Zyla. Zyla later testified that he obtained drugs from the appellant and also testified that appellant admitted stealing the drugs from the Bullhead Pharmacy.

 Circumstances surrounding the arrest in the instant case suggest that the officer acted reasonably. The evidence showed that the officer first approached the car because it was parked in the middle of the roadway and blocked traffic. He saw the occupants of the car make a furtive gesture toward the floorboard, and following this action the officer saw pills being thrown from the car. These activities took place in an area known to be frequented by drug users. It was reasonable for the officer to believe that the crime of possession of narcotics was taking place. *See Redmon v. U. S.,* 355 F.2d 407 (9th Cir., 1966); *People v. Tabb,* 208 Cal.App.2d 567, 25 Cal. Rptr. 541 (1962), *remanded on other grounds,* 375 U.S. 27, 84 S.Ct. 90, 11 L.Ed.2d 44 (1963); *People v. Tabb,* 228 Cal.App.2d 750, 39 Cal.Rptr. 675 (1964); *People v. Perez,* 243 Cal.App.2d 528, 52 Cal.Rptr. 514 (1966). Although the search was conducted without a warrant, a warrantless search of an automobile on the highway is constitutionally permissible where there is probable cause to believe that the motor vehicle contains contraband. *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *State ex rel. Hyder v. Superior Court,* 114 Ariz. 337, 560 P.2d 1244 (1977); *State v. Sardo,* 112 Ariz. 509, 543 P.2d 1138 (1975); *State v. Benge,* 110 Ariz. 473, 520 P.2d 843 (1974). The evidence seized from appellant's automobile and the information derived from the persons at the scene were not unlawfully obtained.

## ACCOMPLICE INSTRUCTION

 Appellant next complains that an accomplice instruction should have been given as to witness Zyla at the trial for furnishing narcotic drugs. Appellant relies on A.R.S. § 13–136 in arguing that the trial court committed error by not giving an accomplice instruction.[3] Appellant argues that Zyla should be characterized as an accomplice because Zyla returned some drugs that appellant had originally furnished to him and for that reason should also be charged, as was the appellant, for the crime of furnishing narcotics. How-

---

1. The parties stipulated that appellant had a possessory interest in the motor vehicle, and thus had standing to challenge the search of the automobile. *See Brown v. United States,* 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973).

2. Although appellant drove the automobile to the Swim Beach area, appellant left the vehicle, and was not present when McLean and Jones were arrested.

3. A.R.S. § 13–136 has since been repealed.

ever, it has been held that an accomplice instruction is proper only when the witness could be informed against for the same crime for which the defendant stands accused. *See State v. Blevins,* 106 Ariz. 405, 476 P.2d 860 (1970); *State v. Sims,* 99 Ariz. 302, 409 P.2d 17 (1965). In the instant case the appellant furnished drugs to Zyla. These acts constituted the crime for which appellant was charged. When Zyla returned some of the drugs to appellant, Zyla was not an accomplice to the crime for which appellant was charged. At best Zyla could be charged only for a separate crime of furnishing narcotics, not for the crime for which appellant was charged. *See Hines v. State,* 50 Ala.App. 161, 277 So.2d 905 (1973); *cf. State v. Rivera,* 103 Ariz. 458, 445 P.2d 434 (1968).

### DEFINITION OF "NARCOTIC" DRUGS

Appellant finally urges that Count II of the indictment stating that he furnished Dilaudid cannot support a conviction under a charge of furnishing narcotic drugs.

 The chemist testified that Dilaudid is the trade name for the substance hydro-morphone. Appellant contends that this is insufficient to identify the substance as a narcotic drug. We disagree.

We take judicial notice that Dilaudid is the trade name for hydromorphone which is a derivative of morphine. *State v. Farrell,* 1 Ariz.App. 112, 399 P.2d 915 (1965); *See* Steadman's Medical Dictionary 4th Unabridged Lawyers' Edition (1976) at 663.

A derivative of morphine is a narcotic drug as defined by A.R.S. § 36–1001(12), (14).

Having found no reversible error, the judgment is affirmed.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HAYS and GORDON, JJ., concur.