599 P.2d 199

**STATE of Arizona, Appellee,**

v.

**Joseph Clarence SMITH, Jr., Appellant.**

No. 3988.

Supreme Court of Arizona, In Banc.

July 26, 1979.

Rehearing Denied Sept. 11, 1979.

---

Robert K. Corbin, Atty. Gen., John A. LaSota, Jr., Former Atty. Gen., William J. Schafer, III, Chief Counsel, Crim. Div., Lynn Hamilton, Asst. Attys. Gen., Phoenix, for appellee.

Schmal & Wollschlager, P. A. by Kenneth J. Murray, Phoenix, for appellant.

GORDON, Justice:

Appellant, Joseph Clarence Smith, hereinafter referred to as the defendant, appeals his conviction for first degree rape, kidnap and assault with intent to commit murder. Taking jurisdiction pursuant to A.R.S. § 13–4031, we reverse the judgment of the trial court.

In July of 1975, the victim in this case, a fifteen year old girl named Denise, was hitchhiking in the north Phoenix area at about 8 p. m. She was picked up by two men and taken against her will into the desert, where she was undressed, bound, placed upon an abandoned mattress, and raped by both men. The driver of the car then stuffed her blouse into her mouth and held her head while the passenger stabbed her twice in the back and once in the stomach. The ropes were cut from her hands, and the man who had been the passenger in the car flung her into a nearby ditch. After the men drove away, she managed to scream and walk a short distance. She was discovered by some ranch hands, who worked at a nearby stable, and was taken to a hospital, where she remained for two weeks.

Initially, the police investigation in this matter focused upon the passenger in the vehicle, because Denise felt that she could better describe him. In February of 1976, Denise saw a full face photograph of the defendant in the newspaper in connection with several rape-homicides that had occurred in the desert near Phoenix. Although she thought the defendant might have been the driver of the car that had picked her up, she was not positive.

In September of 1976, Denise was shown a photographic lineup that included a profile shot of the defendant. She identified his picture as being the driver of the car. Several days later the defendant was interviewed by the police. He indicated that he had, in fact, been the driver of the car that picked up Denise. He stated, however, that Denise had voluntarily had intercourse with him, and that it was the passenger in the car who had for some reason stabbed her.

The defendant was indicted by a grand jury for the charges that comprise this case. A *Dessureault* hearing was held at which time the court found that the pretrial identification of the defendant was not unduly suggestive and would not taint a proposed in-court identification. Similarly, at a pretrial hearing, the defendant's statements were found to be voluntary.

At trial defendant's theory of the case was that the victim had identified the wrong man and that the Sheriff's office and the Maricopa County Attorney's office had conspired to frame him. The defendant was convicted by a jury on all three counts.

The following issues are raised by this appeal:

1. Whether the court erred in ruling defendant's statements voluntary and admissible.

2. Whether the court erred in denying defendant's motion to dismiss the indictment and/or remand for redetermination of probable cause.

3. Whether the court erred in limiting the introduction of evidence at the *Dessureault* hearing.

4. Whether the court erred in excluding all spectators except the press during the victim's testimony in the state's case-in-chief.

5. Whether the court erred in not granting a mistrial when a witness for the state mentioned that the defendant's car was in the police impound lot in relation to another offense.

6. Whether it was error to admit into evidence a photograph of a mattress with blood on it.

7. Whether the court's preclusion of certain undisclosed defense witnesses was in violation of the 6th Amendment to the United States Constitution.

8. Whether the court erred by sentencing the defendant in the absence of one of his two attorneys.

9. Whether the court erred by not continuing the time set for a presentencing hearing.

## VOLUNTARINESS OF DEFENDANT'S STATEMENTS

Defendant contends that his confession was involuntary, having been made in response to certain implied promises by the police. Confessions are prima facie involuntary, and the burden is on the state to prove that the defendant's statements were freely and voluntarily made. *State v. Knapp*, 114 Ariz. 531, 562 P.2d 704 (1977); *cert. denied*, 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978); *State v. Edwards*, 111 Ariz. 357, 529 P.2d 1174 (1974). Moreover, for a confession to be deemed voluntary, it must not be obtained by a direct or an implied promise, however slight. *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). Although *Brady, supra*, explicitly states that an implied promise will render a confession involuntary, we simply do not find that any implied promises were made.

While in prison for another offense, the defendant told the news media, his family, and his friends that he wished to talk to the police in reference to the desert-rape-homicides that had occurred in the Phoenix area. The defendant was transported from the Arizona State Prison to the Maricopa County Jail for an initial appearance on the charges that stemmed from the Denise incident. On September 25, 1976, while he was in Phoenix, he was interviewed by four police officers concerning the rape of Denise and the murders of Neva Lee and Sandy Spencer.

■ At the voluntariness hearing, three of the investigating officers testified that the defendant waived his Miranda rights and that as a prelude to talking with them, demanded several stipulations. Their testimony revealed that the defendant told the officers that in return for his information, he wanted police protection for his parents, his girl friend and her son; a reversal of the seventy-five year sentence that he was serving on a prior conviction; a transfer to a prison outside Arizona; and immunity from prosecution in the murders of Neva Lee and Sandy Spencer.

The officers testified that they told the defendant that it was impossible for them to make any sort of a deal on the murder cases and that the reversal of his rape conviction was out of their hands. He was also told that his family would be given police protection if they needed it and that his girl friend was already out of the state. Last of all, the police told the defendant that an interstate pact with another jail was a feasible idea; but that they could not guarantee any action in this regard.

On appeal, the defendant does not dispute the veracity of the officers' testimony but merely asserts that he was left with implied assurances of protection for his family and the possibility of his transfer to another state to serve his time. We disagree.

The trial court's findings of fact on the voluntary nature of a confession will be upheld by this Court if supported by adequate evidence in the record. *State v. Jerousek*, 121 Ariz. 420, 590 P.2d 1366 (1979). Finding that the record supports the trial court's ruling on voluntariness, we affirm.

## MOTION TO DISMISS THE INDICTMENT

■ Defendant contends that the trial court erred in denying his motion to dismiss the indictment and/or remand for a redetermination of probable cause. The basis of his argument is that although the grand jury transcript reflects that the applicable statutes were read to the jury, the actual reading of those statutes is not recorded.

The trial court denied defendant's motion as untimely filed and also on the merits. We do not reach the merits of this issue, as we agree with the trial court that the defendant's motion was untimely. Pursuant to 17 A.R.S., Rules of Criminal Procedure, rule 12.9.a, a grand jury proceeding may be challenged only by a motion for a new finding of probable cause. Subsection b. of the same rule states that such a motion may be filed no later than twenty-five days af-

ter the transcript and minutes of the grand jury proceeding have been filed. A defendant waives his objections to the grand jury proceeding by failing to comply with the timeliness requirement. *See State v. Lopez*, 27 Ariz.App. 408, 555 P.2d 667 (1976).

The grand jury minutes, in this case, were filed on September 28, 1976, and the transcript was filed on October 18, 1976. Because the defendant did not move for a redetermination of probable cause until April 11, 1977, his motion must be denied as untimely.

## EVIDENCE AT DESSUREAULT HEARING

◼ The defendant contends that the trial court erred in limiting the introduction of evidence at the *Dessureault* hearing. The purpose of a *Dessureault* hearing is to determine if the circumstances surrounding a pretrial identification of the defendant were unduly suggestive so as to give rise to a very substantial likelihood of irreparable misidentification. *See Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *State v. Dessureault*, 104 Ariz. 380, 453 P.2d 951 (1969), *cert. denied*, 397 U.S. 965, 90 S.Ct. 1000, 25 L.Ed.2d 257 (1970).

The defendant's argument at the *Dessureault* hearing was that the victim identified him, in a photo line-up, because she had previously seen his picture in the newspaper in connection with the investigation of several rape-homicides. The victim testified at the *Dessureault* hearing that she had shown a newspaper photo of the defendant to her family, because she felt he might be the driver of the car that had picked her up. She stated, however, that the police were not informed of this, because she was not positive that this was the same man.

The evidence that the defendant unsuccessfully sought to admit was the testimony of a newspaper cartoonist and a police detective who, with the aid of the victim, had created likenesses of the *Passenger* suspect. The defendant also sought to introduce the fact that Denise had made a mistake in her initial identification of the *passenger* sus-

pect. The defendant in this case, however, was accused of having been the driver of the car that picked up Denise, and not the passenger.

◼ The trial court excluded the proffered evidence stating that the *Dessureault* hearing was for the purpose of determining if the circumstances surrounding the identification of *this* defendant were unduly suggestive and that the procedure by which the victim had identified the passenger suspect was irrelevant. We agree with the trial court that testimony as to the victim's misidentification of the passenger was irrelevant to the *Dessureault* proceedings. The weight of such testimony goes to the victim's credibility, which is a matter for the evaluation of the jury. *State v. Jerousek*, 121 Ariz. 420, 590 P.2d 1366 (1979). The defendant's offer of proof as to the proffered testimony of the newspaper artist and the detective artist, however, revealed that both would have testified that prior to seeing the defendant's picture in the newspaper, the victim was unable to articulate a description of the driver, which would aid them in creating a likeness of him.

◼ The factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *State v. Taylor*, 109 Ariz. 518, 514 P.2d 439 (1973). Because the accuracy of the witness' prior description of the criminal is one of the factors to be considered in evaluating the potentiality of misidentification, the artists' testimony should have been admitted at the *Dessureault* hearing. However, for several reasons we find that the error was harmless.

Initially the record reveals that although the artists were not allowed to testify, the defense attorney elicited the substance of

their proffered testimony from the victim. On cross-examination, Denise testified that she was unable to assist an artist in forming a composite of the driver, because she could not provide him with an adequate description.

Moreover, we recognize that there is a distinction between being able to describe a man and being able to describe him sufficiently to aid an artist in recreating his image. Denise testified that she gave a description of her attackers to the police, and that she described the driver of the car as being slender, with dark brown hair and shorter than the passenger, but taller than herself. This is an accurate description of defendant Smith and his relationship in size to David Miles, who confessed to being the passenger in the car.

When analyzing the other factors to be considered in evaluating the likelihood of misidentification, we conclude that even if the artists' testimony had been allowed, the prosecution would have, nevertheless, established that the pretrial identification was not unduly suggestive. Denise testified that she had observed her attackers for five to ten minutes in the car, and for approximately one half hour at the scene of the crime. She explained that the profile photo of the defendant in the lineup was what made her positive about the identification. (The newspaper picture that she had seen of the defendant was not a profile.) This was because she had studied the driver's profile while sitting next to him in the car:

> "Q. Okay. Would you tell the Court, then, how it was that you happened to see the individual that you identified more from the side than from the front.
> "A. [Denise] Because he was driving and I was sitting in the middle and when I started screaming, he was screaming back at me but he was still watching the road and I remember just looking at him."

Denise also testified that she was able to pay close attention to her attackers after they got out of the car. Finally, although over a year had passed between the attack and Denise's identification of the defend-

ant, she testified that she was positive, in her own mind, that this was the driver of the car.

We conclude, therefore, that the pretrial identification of the defendant was not conducive to a likelihood of misidentification, and we hold that the exclusion of the artists' testimony from the *Dessureault* hearing was harmless error.

## EXCLUSION OF SPECTATORS

▇▇▇ The defendant contends that the trial court denied him his right to a public trial by excluding all spectators, except the press, during the victim's testimony in the state's case-in-chief. This Court does not agree. The right to a public trial is not absolute, but rather must be balanced against other interests that might justify the closing of the courtroom to the public. *United States v. Eisner*, 533 F.2d 987 (6th Cir. 1976), *cert. denied*, 429 U.S. 919, 97 S.Ct. 314, 50 L.Ed.2d 286.

Pursuant to 17 A.R.S., Rules of Criminal Procedure, rule 9.3.c, the court may, in its discretion, exclude all spectators except representatives of the press during the testimony of a witness whenever reasonably necessary to prevent embarrassment or emotional disturbance of the witness. The propriety of the court's actions, however, depends on the particular circumstances of each case. *Eisner, supra.*

We hold that protection of the dignity of the complaining witness in a rape case is a substantial justification for excluding spectators:

> "Rape constitutes an intrusion upon areas of the victim's life, both physical and psychological, to which our society attaches the deepest sense of privacy. Shame and loss of dignity, however unjustified from a moral standpoint, are natural byproducts of an attempt to recount details of a rape before a curious and disinterested audience. The ordeal of describing an unwanted sexual encounter before persons with no more than a prurient interest in it aggravates the original injury. Mitigation of the ordeal is a justifiable concern of the public and

of the trial court." *United States ex rel. Latimore v. Sielaff*, 561 F.2d 691, 694–695 (7th Cir. 1977), *cert. denied*, 434 U.S. 1076, 98 S.Ct. 1266, 55 L.Ed.2d 782 (1978).

In the instant case, the victim was not only raped by two men, but was also brutally stabbed, kicked, and abandoned to die. Because of the embarrassment and humiliation that would result from relating such gruesome circumstances to a room of strangers, we do not feel that the trial court abused its discretion by granting the victim's request to exclude spectators from the courtroom during her testimony.

■ The presence of this legitimate justification eliminates any implication that the defendant was prejudiced as a matter of law by the exclusion of the spectators and leaves us with the question of whether the defendant was actually prejudiced by the action. *Latimore, supra.* A review of the record reveals that no prejudice occurred.

Initially we note that the press was never excluded from the courtroom and that spectators were excluded only during the victim's testimony in the state's case-in-chief. The public was not excluded when the defense called Denise as a witness in its case-in-chief and examined her concerning the basis of her identification. The period of exclusion, therefore, cannot be said to have exceeded a scope that was necessary to achieve the legitimate purpose of preserving the victim's dignity. Moreover, we reject the defendant's contention that the victim would have been more likely to tell the truth to a crowded courtroom. *Latimore, supra.*

Since the record reveals that the exclusion of spectators during the victim's testimony served a legitimate purpose and did not prejudice the defendant, we conclude that he was not denied a fair trial by the exclusion.

## DENIAL OF MISTRIAL

The defendant argues that the court erred in failing to grant a motion for a mistrial when Officer Dominguez referred to the fact that the accused's car was in the police impound lot in relation to another offense:

"Q. [Defense attorney] Now, in connection to—do you know who actually would have taken her out there to view the victim's vehicle—excuse me, to view Joseph Clarence Smith's vehicle?

"A. [Officer Dominguez] Being that it was in the jurisdiction of the Police Department in Phoenix, I presume that they would have conducted that.

"Q. It is not in the Maricopa County Sheriff's Compound?

"A. The vehicle was impounded at our direction which involved other offenses but not—we didn't specifically handle the entire investigation on Denise * * * assault."

■ Admission of evidence concerning acts of the defendant that constitute other crimes is prejudicial to his receiving a fair trial, unless the evidence comes within an exception to the general rule, *see* 17A A.R.S., Rules of Evidence, rule 404(b), or is admissible for impeachment purposes. 17A A.R.S., Rules of Evidence, rules 608(b) and 609. In general, the volunteered testimony of an officer, which indicates serious unrelated prior bad acts of the defendant that would otherwise be inadmissible, merits a mistrial. *Compare State v. Saenz*, 98 Ariz. 181, 403 P.2d 280 (1965) *with State v. Gallagher*, 97 Ariz. 1, 396 P.2d 241 (1964) and *State v. Smith*, 96 Ariz. 150, 393 P.2d 251 (1964) and *State v. Babineaux*, 22 Ariz.App. 322, 526 P.2d 1277 (1974).

Officer Dominguez, however, did not state that the defendant was a suspect in another case, nor that he had been arrested on other charges. He merely stated that the defendant's car had been involved in some offense. Moreover, it was unclear from his statement that the car had been impounded because of its involvement in a serious crime, and not simply because of a traffic violation. In our opinion, therefore, the statement was not so prejudicial as to require a mistrial or a reversal of this case.

Moreover, the defendant introduced his criminal record at trial in support of his theory that he had been framed by the

authorities. (The defendant contended throughout the trial that because he was a known sex offender the police had framed him on these charges in order to make themselves look good in an election year.) Any error that might have resulted from Officer Dominguez' reference to another offense was, therefore, harmless.

## MATTRESS PHOTOGRAPH

The defendant contends that it was error for the trial court to admit into evidence a photograph of a mattress with blood stains on it. He asserts that the photograph was gruesome and was introduced to lock the emotions of the jury against the defendant. Moreover, he contends that the photograph was not relevant to the issues presented at trial, because his defense never contended that the brutal rape and kidnap did not occur. Instead, he defended on the grounds that he was not involved. The discretion of the trial court in admitting evidence will not be disturbed on appeal unless it has been clearly abused. *State v. Chatman*, 109 Ariz. 275, 508 P.2d 739 (1973), *cert. denied*, 414 U.S. 1010, 94 S.Ct. 373, 38 L.Ed.2d 247. We find no abuse of discretion in the instant case.

Initially, we simply do not find the photograph to be so gruesome or inflammatory as to incite the passions of the jury or to prejudice the defendant. Although it is not a pleasant picture, the photograph merely reveals blood spots that are partially upon the end of a tattered mattress, and partially upon the ground. In *State v. Coward*, 108 Ariz. 270, 496 P.2d 131 (1972), we found similar photographs of blood spots to be in no way gruesome or inflammatory.

The defendant is correct in his contention that photographs should be admitted into evidence only if they are relevant to an issue in the case. *State v. Mohr*, 106 Ariz. 402, 476 P.2d 857 (1970). We find, however, that the mattress photograph was relevant in that it corroborated and explained the testimony of the victim. *State v. Ferrari*, 112 Ariz. 324, 541 P.2d 921 (1975); *State v. Thomas*, 110 Ariz. 120, 515 P.2d 865 (1973).

The mattress photo was one of several photographs of the scene of the attack that was admitted into evidence. Several of these other photos also reveal blood at the scene of the crime. Defense counsel, however, did not object to these photos. The defendant contended that the victim had misidentified him as one of her attackers. Photographs that corroborate her description of the location where the assault occurred added credibility to her story and helped to refute the defendant's attack upon the accuracy of her perceptions.

Finding that the probative value of the mattress photograph outweighed its probable prejudicial effect, *State v. Beers*, 8 Ariz. App. 534, 448 P.2d 104 (1968), we hold that it was properly admitted into evidence.

## PRECLUSION OF UNDISCLOSED DEFENSE WITNESSES

The defendant contends that the trial court imposed too severe a sanction under 17 A.R.S., Rules of Criminal Procedure, rule 15.7, for his failure to disclose certain witnesses. In the months prior to trial, defense counsel's disclosure of witnesses was extremely general and included anyone listed in the police departmental records, plus several other specifically named individuals. It is unclear from the record whether the state's disclosure met the requirements of rule 15.1.a(1). Although the state informed the defense that discovery material and information was available for inspection and copying at the County Attorney's office, it is unclear if this information included the names and addresses of the state's witnesses.

Prior to the empanelment voir dire, however, both the state and the defendant provided the court with a list of prospective witnesses. It was these names that were read to the jury panel to ensure that none of the jurors was acquainted with a witness. The state subsequently presented its case-in-chief and called only those witnesses whose names had been presented to the trial court for voir dire. At the close of the state's case, the prosecutor made a motion

to preclude the defendant from calling any witnesses. The state asserted that it had not been advised of the accused's defenses, nor his witnesses, because his disclosure had been so general as to be tantamount to no disclosure at all.

The trial court ruled that it would not preclude all of the defendant's witnesses, because the defendant had made some effort to comply with rule 15. Instead the trial judge precluded only those names not given to the court for voir dire purposes. The defendant claims that this precluded him from calling witnesses that he needed to present his defense and, therefore, violated his Sixth Amendment right to compulsory process and to present witnesses.

Pursuant to 17 A.R.S., Rules of Criminal Procedure, rule 15.7, the trial court is authorized to impose sanctions upon a party who fails to comply with any of the provisions of rule 15. One such sanction is the preclusion of an undisclosed witness' testimony. In general, the appropriate sanction for noncompliance with rule 15 is left to the sound discretion of the trial court. *State v. Clark*, 112 Ariz. 493, 543 P.2d 1122 (1975).

The trial court, however, should seek to apply sanctions that affect the evidence at trial and the merits of the case as little as possible, since the Rules of Criminal Procedure are designed to implement, and not to impede, the fair and speedy determination of cases. *See State v. Birdsall*, 23 Ariz.App. 454, 533 P.2d 1191 (1975). Prohibiting the calling of a witness should be invoked only in those cases where other less stringent sanctions are not applicable to effect the ends of justice. *State v. Gutierrez*, 121 Ariz. 176, 589 P.2d 50 (App.1978). To be effective, discovery rules must be applied with equal force to both parties. *State v. Dorow*, 116 Ariz. 294, 569 P.2d 236 (1977).

We, therefore, hold that prior to precluding either party's witnesses, as a discovery sanction, the court must make an inquiry into the surrounding circumstances. Failure of the trial court to do so constitutes error. *Smith v. State*, 353 So.2d 205 (Fla.Dist.Ct.App.1977). The inquiry should determine if less stringent sanctions can be used. *See Gutierrez, supra.* The court should also consider how vital the precluded witness is to the proponent's case,[1] whether the opposing party will be surprised and prejudiced by the witness' testimony,[2] whether the discovery violation was motivated by bad faith or wilfulness,[3] and any other relevant circumstances.[4]

The defendant's offers of proof reveal that the precluded witnesses were vital to his defense of misidentification. Although it is unlikely that the state would have been surprised by the testimony of any of the precluded witnesses, defendant's general disclosure left the state uninformed as to which of many inconsistent defenses would be presented and who would be called to support the defendant's case. Although the trial court made no finding that the discovery violation was motivated by bad faith, the defendant never offered an explanation for his initial general disclosure. Moreover, he could not explain why he failed to inform the judge, at voir dire, that he would be calling these witnesses.

Although the court was authorized to impose sanctions upon the defendant for his failure to comply with the provisions of rule 15, we conclude that less severe sanctions should have been utilized. The trial court could have determined if any of the jurors, including the two alternates, knew the additional defense witnesses. Even if one or two jurors knew, or were related to, any of these witnesses and felt that they could not put aside their relationship when making a determination, they could have been excused and the alternate jurors substituted.

1. *See Birdsall, supra.*

2. *Compare State v. Hunt*, 118 Ariz. 431, 577 P.2d 717 (1978) *with State v. Brewer*, 110 Ariz. 12, 514 P.2d 1008 (1973) *and State v. Warren*, 26 Ariz.App. 371, 548 P.2d 1183 (1976).

3. *See Birdsall, supra.*

4. *See Hunt, supra.*

A continuance could have then been granted and the state allowed to reopen its case, if necessary. If, in fact, more than two jurors would have been disqualified, a mistrial could have been declared and the trial started anew before a different jury.

Because the preclusion of defense witnesses was too severe a sanction to impose upon the defendant, this case is reversed and remanded.

## SENTENCING IN ABSENCE OF CO-COUNSEL AND DENIAL OF CONTINUANCE FOR PRESENTENCING HEARING

We do not reach these two issues, because it is unlikely that they will reoccur at the defendant's new trial.

The judgment and sentence of the Superior Court are reversed and the case remanded for proceedings not inconsistent with this opinion.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HAYS and HOLOHAN, JJ., concur.