NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

LINDY S., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, Z.O., E.O., *Appellees.*

No. 1 CA-JV 19-0385

FILED 6-30-2020

Appeal from the Superior Court in Yavapai County
No. P1300JD201900008

The Honorable Anna C. Young, Judge

**AFFIRMED**

COUNSEL

Law Office of Florence M. Bruemmer, P.C.
By Florence M. Bruemmer
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Amanda Adams
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Jennifer M. Perkins delivered the decision of the Court, in which Presiding Judge David D. Weinzweig and Judge James B. Morse Jr. joined.

---

**P E R K I N S**, Judge:

¶1        Lindy S. ("Mother") appeals the juvenile court's decision to terminate her parental rights to Z.O. and E.O. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2        Z.O. was born in 2016 to Mother and Zechariah O. ("Father"; collectively "Parents"). Father is not a party to this appeal. Mother began abusing alcohol and controlled substances at age 19 and continued for approximately six years. In May 2018, police executed a search warrant on Parents' home and found drugs, allegedly stolen weapons, and "dirt and grime" on the floor. The house had no running water, and Mother could not recall when she last bathed Z.O. Mother's physical appearance resembled a methamphetamine user with "sores on her face, and pale sunken skin." Indeed, Mother admitted to "parachuting" methamphetamine that morning and to ingesting methamphetamine "up to six times a day," including twice the day before. The Department of Child Safety (DCS) removed Z.O. and placed the child with her paternal grandparents.

¶3        DCS filed a dependency petition, alleging Mother's inability to parent due to substance abuse and a lack of safe and secure housing. DCS referred Mother for random urinalysis and Terros substance abuse treatment. Providers at Terros diagnosed Mother with severe amphetamine-type substance abuse disorder, severe alcohol use disorder, and generalized anxiety disorder. Terros initially described her motivation to change to be "low and precontemplative." Mother participated in services at the beginning but missed drug tests in June 2018. Mother also admitted that she still used methamphetamine despite negative test results. After completing intensive outpatient therapy in August 2018, Mother relapsed and did not seek inpatient treatment.

¶4            E.O. was born in January 2019 exposed to amphetamines and MDMA or "ecstasy." For that reason, and because of Mother's observed failure to bond and care for E.O. while in the hospital, DCS removed E.O. from Mother's care and placed the child with her paternal grandparents. DCS petitioned to find E.O. dependent and Mother pled no contest. Mother then entered inpatient drug treatment at Scottsdale Recovery Center.

¶5            In June 2019, DCS moved to terminate Mother's parental rights to Z.O. and E.O., based on neglect and substance abuse. The juvenile court held a severance hearing in September 2019.

¶6            At the hearing, Mother's DCS case manager testified that Mother failed to establish sobriety over the course of the dependency. The case manager noted that Mother graduated from an intensive outpatient program in August 2018 and then relapsed but never sought help, despite her pregnancy. The case manager also testified about Mother's admitted methamphetamine use in April and May 2019 and noted that Mother tried to hide this relapse by diluting her test materials. She still tested positive for methamphetamine over this period. The case manager explained that while Mother had periods of sobriety during dependency, a relapse always followed. She also noted that DCS provided various services including Arizona Families FIRST, Terros, counseling, random urinalysis, and supervised visitation. Finally, she testified that, despite Mother's participation in some services, DCS did not believe Mother had changed her behavior sufficiently to parent safely.

¶7            As to the placement, the case manager testified that the paternal grandparents were an adoptive placement and that the children were adoptable. Further, she testified that adoption would be in the best interest of the children as they would receive stability if adopted and be at risk of developmental delays without the permanence of adoption.

¶8            Mother testified that she had been sober for 81 days from any illegal substance or alcohol, and about 100 days from methamphetamine at the time of trial. She noted that she lacked housing for Z.O. and E.O. but intended to find new housing after completing inpatient treatment. Mother called the Chief Operating Officer of the Scottsdale Recovery Center to testify that she was heavily engaged in inpatient programming. This includes "firm boundaries" around off-site activity that require Mother to check-in with a behavioral health technician. He also shared his belief that Mother was in the contemplative stage of recovery and that her April through May use was a brief lapse rather than a relapse, though he admitted to Mother's history of failing to maintain sobriety "without those

firm boundaries." Ultimately, he testified that he would be comfortable releasing Mother the day of trial "[w]ith the plan that's already been created."

¶9        The court terminated Mother's parental rights on three grounds: neglect, substance abuse, and six-months' time-in-care. The court found that Mother had failed to provide "supervision, food, clothing, shelter, or medical care" to Z.O., noting that DCS removed her from a home that contained drugs, allegedly stolen weapons, and filth. The court also found that Mother had no stable housing for either child at the time of trial. Further, the court found that Mother had failed to maintain consistent sobriety. Finally, the court noted that both Z.O. and E.O. were born substance exposed because of Mother's substance abuse. Mother timely appealed.

## DISCUSSION

¶10        We review the termination of parental rights for an abuse of discretion. *Titus S. v. Dep't of Child Safety*, 244 Ariz. 365, 369, ¶ 15 (App. 2018). This court will uphold the juvenile court's findings of fact "if supported by adequate evidence in the record." *Christy C. v. Ariz. Dep't Econ. Sec.*, 214 Ariz. 445, 452, ¶ 19 (App. 2007) (quoting *State v. Smith*, 123 Ariz. 243, 247 (1979)). "The juvenile court, as the trier of fact in a termination proceeding, is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002).

## I.        Statutory Ground

¶11        To terminate the parent-child relationship, the juvenile court must find at least one statutory ground under A.R.S. § 8-533(B) by clear and convincing evidence. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005). The court must also find by a preponderance of the evidence that severance would be in the best interests of the child. A.R.S. § 8-533(B); *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 149–50, ¶ 8 (2018).

¶12        A court may terminate a parent's rights based on substance abuse when "the parent is unable to discharge parental responsibilities because of . . . a history of chronic abuse of dangerous drugs, controlled substances, or alcohol and there are reasonable grounds to believe that the condition will continue for a prolonged indefinite period." A.R.S. § 8-533(B)(3). "[D]rug abuse need not be consistent to be considered chronic." *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 377, ¶ 16 (App. 2010). "[A] parent's 'temporary abstinence from drugs and alcohol does not

outweigh her . . . consistent inability to abstain during the case." *Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 287, ¶ 17 (App. 2016) (quoting *Raymond F.*, 224 Ariz. at 379, ¶ 29). Chronic abuse is abuse that "last[s] a long time, [is] long-continued, lingering, and inveterate." *Raymond F.*, 224 Ariz. at 377, ¶ 16 (quoting *Chronic*, Oxford English Dictionary (compact ed. 1971)). Further, "a child's interest in permanency must prevail over a parent's uncertain battle with drugs." *Jennifer S.*, 240 Ariz. at 287, ¶ 17.

¶13 Mother argues that reasonable evidence did not prove her substance abuse would continue for a prolonged indeterminate period. She also argues that we should favor the COO's opinion that Mother would ultimately succeed over her case manager's opinion that her condition would likely continue. We decline to reweigh the evidence. *Jesus M.*, 203 Ariz. at 280, ¶ 4.

¶14 Mother has abused various substances since the age of 19. She attempted over the course of the dependency to remain sober but relapsed several times for extended periods. The COO of Scottsdale Recovery Center admitted that before entering the Center's "firm boundaries," Mother could not achieve sobriety. Her latest month-long relapse occurred just three months before the termination hearing. While the COO disagreed with the DCS case manager on the likelihood of relapse in the near future, Mother's history provided reasonable evidence for the juvenile court's finding. *See Raymond F.*, 224 Ariz. at 378, ¶ 29 (finding reasonable belief that chronic drug abuse would continue where parent "had been unable to rise above his addiction in a *non-custodial and unstructured* setting") (emphasis added).

¶15 Because we affirm the juvenile court's order on chronic substance abuse grounds, we need not consider the juvenile court's other grounds for termination. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 251, ¶ 27 (2000).

## II. Best Interests

¶16 Once a court has found at least one statutory ground to terminate, it may "presume that the interests of the parent and child diverge." *Kent K.*, 210 Ariz. at 286, ¶ 35. We thus focus our inquiry at the best interests stage on "the interests of the child as distinct from those of the parent." *Id.* at 285, ¶ 31. The "child's interest in stability and security" is the touchstone of our inquiry. *See id.* at 286, ¶ 34. Termination of parental rights is in the child's best interests "if either: (1) the child will benefit from severance; or (2) the child will be harmed if severance is denied." *Alma S.*,

245 Ariz. at 150, ¶ 13. The juvenile court must consider the totality of the circumstances existing at the time of the severance. *Id.*

**¶17**        Here, the court found that termination of rights would give the children stability and protect them from substance abuse. The court also found that failing to terminate Mother's rights would detrimentally affect the children "because of risk of exposure to substance abuse and neglect" and a lack of stability. Mother's admitted history of relapse, as well as her current living situation, which does not allow children, support this finding. Further, the DCS case manager testified that Z.O. and E.O. were in an adoptive placement that was meeting their needs. *See Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 50, ¶ 19 (App. 2004). The juvenile court did not abuse its discretion in finding that termination was in Z.O. and E.O.'s best interests.

## CONCLUSION

**¶18**        We affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA