NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STEVEN P., ASHLEY P., *Appellants*,

*v.*

DEPARTMENT OF CHILD SAFETY, A.P., *Appellees*.

No. 1 CA-JV 20-0123
FILED 10-15-2020

Appeal from the Superior Court in Maricopa County
No.  JD18092
The Honorable Michael Gordon, Judge

**AFFIRMED**

COUNSEL

Law Office of Ed Johnson, PLLC, Phoenix
By Edward D. Johnson
*Counsel for Father*

David W. Bell
*Counsel for Mother*

Arizona Attorney General's Office, Phoenix
By Emily M. Stokes
*Counsel for Department of Child Safety*

_____

**MEMORANDUM DECISION**

Presiding Judge Jennifer M. Perkins delivered the decision of the Court, in which Judge David B. Gass and Judge Michael J. Brown joined.

_____

**P E R K I N S**, Judge:

**¶1**         Steven P. ("Father") and Ashley P. ("Mother") (collectively: "Parents") appeal the juvenile court's order terminating their parental rights to A.P., born in November 2011. For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

**¶2**         In March 2018, DCS received a report that stitches on A.P.'s chin became infected after Parents failed to have them removed. DCS visited the home and observed both dangerous and unsanitary conditions. In April, DCS followed up by asking Parents and the paternal uncle who was living with them to participate in drug testing. Mother tested positive for amphetamine, while Father tested positive for methamphetamine and THC.

**¶3**         DCS then filed a dependency petition against Parents. As to Mother, DCS alleged neglect due to mental health issues, substance abuse, and failure to provide basic needs; and as to Father due to substance abuse and failure to provide basic needs. DCS placed A.P. with her maternal aunt and uncle, with whom she has resided since. As conditions for A.P.'s return, DCS required Parents to engage in substance abuse and mental health treatment, and to provide a safe home.

**¶4**         DCS referred Father to TERROS for random urinalysis; following his intake TERROS recommended Father receive intensive outpatient treatment. TERROS closed Father out of his referral for lack of contact in August, but he reengaged in services in September and engaged inconsistently in treatment until being closed out again in March 2019. Father admitted to using methamphetamine and marijuana throughout this period, and he failed to test until mid-2019.

**¶5**         DCS also referred Mother for substance abuse treatment with TERROS in April 2018; TERROS discharged her for lack of contact in August. DCS rereferred Mother to TERROS in September 2018 for outpatient treatment and she engaged in drug testing infrequently through

June 2019. She tested positive for methamphetamine in October and November 2018 and January 2019. She tested positive for methamphetamine again in July and August 2019 after DCS again referred her for testing.

¶6            DCS moved to terminate Parents' relationship with A.P. in July 2019, citing grounds of substance abuse and fifteen-months time in care as to both Parents. The juvenile court ordered that DCS refer Parents for a psychological evaluation prior to trial.

¶7            Dr. Alex Levitan evaluated Parents in September 2019. He diagnosed Father with unspecified cannabis abuse disorder and unspecified substance abuse disorder. His prognosis for Father's improvement was "poor, given his substance abuse history, his current substance use, and the lack of treatment progress noted." Because Father was only participating in "standard outpatient therapy" for substance abuse, Dr. Levitan recommended Father be "reassessed" to determine his correct level of treatment, and further recommended continued drug testing.

¶8            Dr. Levitan diagnosed Mother with, among other things, unspecified stimulant and cannabis disorder. His prognosis for Mother was "guarded" given her limited treatment. He recommended that Mother engage in individual counseling to address her substance abuse.

¶9            In January 2020, Mother twice tested positive for methamphetamine after taking hair-follicle tests, though she tested negative through urinalysis. Mother maintained that she had been sober since at least July 29, 2019. Father did not test positive for methamphetamine or marijuana but began testing positive for alcohol that month.

¶10           The court held three days of termination hearings in February 2020. DCS first called Dr. Tonya Mitchell, a forensic toxicologist, to testify concerning Mother's positive tests from July and August 2018 and January 2020. Dr. Mitchell rejected Mother's claim that her legitimate medications resulted in false positives. Concerning the July and August tests, Dr. Mitchell noted that, "in order for [methamphetamine and marijuana metabolites] to increase in concentration on the August the 2nd test, [Mother] would've had to use methamphetamine and marijuana after . . . July the 29th." She also testified that not only would Mother's disclosed prescriptions not produce a false positive test for methamphetamine, drugs that would produce such a test "are rarely prescribed." As for the January

tests, Dr. Mitchell opined that they indicated Mother had used methamphetamine in the three months prior to the test.

¶11        Mother testified about her prior misstatements to TERROS about her methamphetamine use, specifically that she had previously stated that positive tests from 2018 could be explained through medications despite using methamphetamine at the time. Mother also testified that despite her positive hair follicle results, she had not used methamphetamine since July 28, 2019.

¶12        Father testified to his current alcohol use, despite knowing "the expectation was that [Father] had to be completely sober of all substances." He testified he had not used marijuana for the four months preceding trial, and he had only started drinking to cope with the stress of the trial.

¶13        Dr. Levitan testified on behalf of DCS. Given Mother's denial of methamphetamine use despite testing positive in January, he testified that he downgraded Mother's prognosis from guarded to poor. He noted that his diagnosis considered A.P.'s special needs, which contributed to the poor diagnosis.

¶14        Dr. Levitan also testified that Father's prognosis to parent successfully was poor based on his continued alcohol use and history of switching substances. He testified that sobriety should be present in both parents for at least twelve months to have confidence that it would persist. On cross-examination Dr. Levitan conceded that, based on testing from the week before trial began, Father had not been drinking daily, and that while Dr. Levitan still had substance abuse concerns, Father was making progress. That said, Dr. Levitan affirmed that despite his progress, Father's prognosis was poor.

¶15        DCS Safety Specialist Liu testified that DCS offered Parents substance abuse treatment, including inpatient services that both Parents refused, and drug testing.

¶16        In March 2020, the court issued a sixteen-page minute entry terminating Parents' rights to A.P on both grounds of fifteen-months time in care and substance abuse. The court found that severance was in A.P.'s best interest because A.P. is in a placement that is both adoptive and meets all of her needs. Parents timely appealed.

4

**DISCUSSION**

**¶17**        We review the termination of parental rights for an abuse of discretion. *Titus S. v. Dep't of Child Safety*, 244 Ariz. 365, 369, ¶ 15 (App. 2018). This court will uphold the juvenile court's findings of fact "if supported by adequate evidence in the record." *Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 452, ¶ 19 (App. 2007) (quoting *State v. Smith*, 123 Ariz. 243, 247 (1979)). "The juvenile court, as the trier of fact in a termination proceeding, is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002).

**¶18**        "Before a State may sever completely and irrevocably the rights of parents in their natural child, due process requires that the State support its allegations by at least clear and convincing evidence." *Santosky v. Kramer*, 455 U.S. 745, 747-48 (1982). "[S]uch a standard adequately conveys to the factfinder the level of subjective certainty about his factual conclusions necessary to satisfy due process." *Id.* at 769.

**I.        Statutory Ground**

**¶19**        To terminate the parent-child relationship, the juvenile court must find parental unfitness based on at least one statutory ground under A.R.S. § 8-533(B) by clear and convincing evidence. *Kent K. v. Bobby M.,* 210 Ariz. 279, 284, ¶ 22 (2005).

**¶20**        The juvenile court may terminate parental rights based on chronic substance abuse when "the parent is unable to discharge parental responsibilities because of … a history of chronic abuse of dangerous drugs, controlled substances, or alcohol and there are reasonable grounds to believe that the condition will continue for a prolonged indefinite period." A.R.S. § 8-533(B)(3). The superior court may find a parent's substance abuse issue will continue based upon such evidence as the parent's history of drug use and the parent's failure to complete or engage in offered services. *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 378-79, ¶ 26 (App. 2010). "[D]rug abuse need not be consistent to be considered chronic." *Id.* at 377, ¶ 16. "[A] parent's temporary abstinence from drugs and alcohol does not outweigh her … consistent inability to abstain during the case." *Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 287, ¶ 17 (App. 2016) (quoting *Raymond F.*, 224 Ariz. at 379, ¶ 29). Importantly, "a child's interest in permanency must prevail over a parent's uncertain battle with drugs." *Jennifer S.*, 240 Ariz. at 287, ¶ 17. Moreover, a parent's failure to abstain from substances despite a pending severance is "evidence [the

parent] has not overcome [the] dependence on drugs and alcohol." *Raymond F.*, 224 Ariz. at 379, ¶ 29.

**¶21** With respect to Mother, the juvenile court found Mother has "a long history of substance abuse," which "contributes to her inability to care for [A.P.]." The court found credible Dr. Mitchell's opinion that Mother's hair follicle test demonstrated a lack of complete abstinence from drugs in the weeks immediately preceding the termination hearing. Although the court acknowledged Mother's "recent engagement" in treatment and testing, after weighing the evidence it found "clear and convincing evidence that her substance abuse will continue for a prolonged and indeterminate time."

**¶22** Concerning Father, the juvenile court acknowledged that Father had begun to abstain from methamphetamine and marijuana but noted that it could not "ignore the length of his substance abuse history" and his recent decision to switch "his substance of choice to alcohol." Based in part on Father's use of alcohol during one day of the hearing itself, which "demonstrate[d] the depth of the substance abuse problem," the court found that Father's substance abuse "will continue for a prolonged and indeterminate period of time."

**¶23** As detailed above, sufficient evidence presented to the juvenile court supports these findings as to both Parents on the chronic substance abuse ground. We will not reweigh this evidence. *See Jesus M.*, 203 Ariz. at 280, ¶ 4.

**¶24** Because evidence supports the juvenile court's termination of both Parent's rights based on chronic substance abuse ground, this court "need not address [their] claims pertaining to the other grounds" for severance. *Id.* at ¶ 3.

## II. Best Interests

**¶25** Once a court has found at least one statutory ground to terminate, it may "presume that the interests of the parent and child diverge." *Kent K.*, 210 Ariz. at 286, ¶ 35. We thus focus our inquiry at the best interests stage on "the interests of the child as distinct from those of the parent." *See id.* at 285, ¶ 31. The "child's interest in stability and security" is the touchstone of our inquiry. *See id.* at 286, ¶ 34. Termination of parental rights is in the child's best interests "if either: (1) the child will benefit from severance; or (2) the child will be harmed if severance is denied." *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150, ¶ 13 (2008). A child benefits from termination when the child is adoptable or a current adoption plan is in

6

place. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 3–4, ¶ 12 (2016). The juvenile court must consider the totality of the circumstances existing at the time of the severance. *Alma S.*, 245 Ariz. at 150, ¶ 13.

**¶26**      Here, the juvenile court found that A.P. is living with her maternal aunt and severance would make her adoptable. It is also the least-restrictive option. Because maternal aunt and maternal grandmother have a close relationship, A.P. can visit with her siblings who live with maternal grandmother while still residing in a safe and stable home. The juvenile court further found that maternal aunt is capable of meeting A.P.'s special needs. Behavioral health providers characterized A.P. as "delayed" and "having behaviors characteristic of a much younger child." Maternal aunt meets these special needs and meets all of A.P.'s physical, social, educational, medical, psychological, and emotional needs. Substantial record evidence supports these findings, and we find no error.

**CONCLUSION**

**¶27**      We affirm.