NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

JOSE F., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, A.C., *Appellees*.

No. 1 CA-JV 20-0251
FILED 1-28-2021

Appeal from the Superior Court in Maricopa County
No. JD33705
The Honorable Lori Horn Bustamante, Judge

**AFFIRMED**

COUNSEL

Vierling Law Offices, Phoenix
By Thomas A. Vierling
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Doriane F. Neaverth
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Presiding Judge Jennifer M. Perkins delivered the decision of the Court, in which Judge Randall M. Howe and Judge Maria Elena Cruz joined.

---

**P E R K I N S**, Judge:

¶1        Jose F. ("Father") appeals the juvenile court's decision to terminate his parental rights to A.C. Mother is not a party to this appeal. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2        Father is the biological parent of A.C., born in September 2018. The Department of Child Services ("DCS") removed A.C. at birth because she was born substance-exposed. DCS then petitioned the court to find A.C. dependent. In February 2019, Father established paternity of A.C. DCS reached out to Father on several occasions to unify him with his daughter. But Father made no attempts to contact A.C. until a DCS case manager visited Father's home in May 2019. That same month, DCS amended its dependency petition to allege Father was unable to provide proper and effective parental care and control due to neglect and substance abuse.

¶3        At that time, Father was on probation for a drug offense. Terms of Father's probation required him to participate in substance abuse treatment and regularly meet with his probation officer. Father failed to comply with these requirements and his probation officer informed DCS that she anticipated seeking a warrant for Father's arrest.

¶4        In September 2019, the juvenile court adjudicated A.C. dependent as to Father and approved DCS's case plan of family reunification.

¶5        DCS offered numerous services to father, including drug testing, substance abuse treatment, visitation services, parent aide services, and case management services. Other than visits, Father failed to participate in any of the services provided to him. Father submitted positive drug tests through the probation department.

¶6        Father's participation in the case remained inconsistent through May 2020. The DCS case manager reported to the Foster Care Review Board ("Board") that she struggled to communicate with Father. She explained that Father never complied with the requested psychological evaluation necessary to structure an accurate recommendation. Father's inconsistency also prevented DCS from referring him to a parent aide intake. And Father failed to submit required drug screens or engage in any form of substance abuse treatment. Noting Father's inconsistent participation in services and his inability to implement necessary behavioral changes, the Board recommended DCS change the case plan to severance and adoption.

¶7        DCS moved to terminate Father's relationship with A.C. in June 2020, citing grounds of substance abuse and nine-months' time in care. Father failed to appear at the initial termination hearing scheduled for July 2020. No parties objected, and the court continued the hearing for August 2020.

¶8        Father again failed to appear. When asked about Father's absence, his counsel stated Father's "job would not let him off work." The juvenile court found Father had notice of the hearing, had been advised of the consequences of failing to appear, and had not shown good cause for his absence. The court thus concluded he waived his right to contest the allegations in the motion for termination and proceeded in his absence.

¶9        At the termination hearing, the DCS case manager testified about Father's history of substance abuse, his failure to participate in substance abuse treatment referrals, and his sporadic and unsuccessful participation in drug testing. The case manager also testified that she does not believe Father is sober and that this impacts his ability to parent A.C. She noted Father made no attempts over the course of nine months to remedy the issues that resulted in A.C. being placed in DCS's custody.

¶10       The court terminated Father's parental rights on substance abuse and fifteen-months' grounds. Father timely appealed. We have jurisdiction under Article 6, Section 9 of the Arizona Constitution, A.R.S. §§ 8-235(A) and 12-120.21(A)(1), and Arizona Rule of Procedure for Juvenile Court 103(A).

**DISCUSSION**

¶11       We review the termination of parental rights for an abuse of discretion. *Titus S. v. Dep't of Child Safety*, 244 Ariz. 365, 369, ¶ 15 (App. 2018). This court will uphold the juvenile court's findings of fact "if

supported by adequate evidence in the record." *Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 452, ¶ 19 (App. 2007) (quoting *State v. Smith*, 123 Ariz. 243, 247 (1979)). "The juvenile court, as the trier of fact in a termination proceeding, is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002).

¶12            "Before a State may sever completely and irrevocably the rights of parents in their natural child, due process requires that the State support its allegations by at least clear and convincing evidence." *Santosky v. Kramer*, 455 U.S. 745, 747–48 (1982). "[S]uch a standard adequately conveys to the factfinder the level of subjective certainty about his factual conclusions necessary to satisfy due process." *Id.* at 769.

I.            **Statutory Ground**

¶13            To terminate the parent-child relationship, the juvenile court must find parental unfitness based on at least one statutory ground under A.R.S. § 8-533(B) by clear and convincing evidence. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005).

¶14            The juvenile court may terminate parental rights based on chronic substance abuse when "the parent is unable to discharge parental responsibilities because of . . . a history of chronic abuse of dangerous drugs, controlled substances, or alcohol and there are reasonable grounds to believe that the condition will continue for a prolonged indefinite period." A.R.S. § 8-533(B)(3). The superior court may find a parent's substance abuse issue will continue based upon such evidence as the parent's history of drug use and the parent's failure to complete or engage in offered services. *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 378–79, ¶ 26 (App. 2010). A parent's failure to abstain from substances despite a pending severance is "evidence [the parent] has not overcome [the] dependence on drugs and alcohol." *Id.* at ¶ 29.

¶15            Father argues that insufficient evidence supports the juvenile court's termination on substance abuse grounds. We disagree. To be sure, the termination hearing record is sparse: the entire hearing took sixteen minutes; a single witness—the case manager—testified exclusively through leading questions; and DCS offered no exhibits to support the testimony regarding the statutory grounds for termination. But Father's failure to appear, for a second time, allowed the court to find he was "deemed to have admitted the allegations in the motion for termination." *See* A.R.S. § 8-537(c); *see also* Ariz. R.P. Juv. Ct. 66(D)(2). According to DCS, Father

committed numerous drug-related offenses between 2006 and 2017, and he tested positive for controlled substances on three occasions during the dependency. The case manager confirmed these allegations and that Father failed to participate in any treatment or services offered by DCS.

¶16	The record contains sufficient evidence to support the juvenile court's findings against Father on the chronic substance abuse ground. We will not reweigh this evidence. *See Jesus M.*, 203 Ariz. at 280, ¶ 4. Because we affirm on the chronic substance abuse ground, we "need not address [Father's] claims pertaining to the other grounds" for severance. *Id.* at ¶ 3.

## II.	Best Interests

¶17	Once a court has found at least one statutory ground to terminate, it may "presume that the interests of the parent and child diverge." *Kent K.*, 210 Ariz. at 286, ¶ 35. We thus focus our inquiry at the best interests stage on "the interests of the child as distinct from those of the parent." *See id.* at 285, ¶ 31. The "child's interest in stability and security" is the touchstone of our inquiry. *See id.* at 286, ¶ 34. Termination of parental rights is in the child's best interests "if either: (1) the child will benefit from severance; or (2) the child will be harmed if severance is denied." *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150, ¶ 13 (2018). A child benefits from termination when the child is adoptable or a current adoption plan is in place. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 3–4, ¶ 12 (2016). The juvenile court must consider the totality of the circumstances existing at the time of the severance. *Alma S.*, 245 Ariz. at 150, ¶ 13.

¶18	Here, the juvenile court found A.C. is living with her maternal aunt and uncle and severance would make her adoptable. It would also provide A.C. with stability. A.C. has been in an out-of-home placement since birth. According to the DCS case manager, A.C. has assimilated into her current placement and is meeting "developmental milestones." The case manager also agreed that failing to terminate Father's rights would be a detriment to A.C. because it would prolong permanency. The juvenile court did not abuse its discretion in finding that termination was in A.C.'s best interests.

## CONCLUSION

¶19        We affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA